(79 South. 421)

No. 21173.

Succession of RUFIN.

(June 29, 1918.)

(Syllabus by the Court.)

1. JUDGMENT ☞67(1), 90 — JUDGMENT BY CONFESSION—REVERSAL.

    A judgment by confession is not set aside for errors of fact which are in no wise attributable to the fault of the party in whose favor such judgment was rendered, and, a fortiori, is that true of a judgment obtained at one's own instance and in one's own favor, as well as in favor of the party to whose prejudice it is sought to be annulled.

2. DESCENT AND DISTRIBUTION ☞82—SUCCESSION—JUDGMENT—WAIVER OF ILLEGITIMACY.

    There is no law in this state, enacted in the interest of public policy or good morals or regulating the devolution of property, which precludes a person who is sui juris from waiving the obstacle of illegitimacy and concurring with his unfortunate brother in the obtention of a judgment putting them in possession, share and share alike, of the estate of their common parents.

Appeal from Civil District Court, Parish of Orleans; T. C. W. Ellis, Judge.

Petition by Hypolite Rufin to annul a judgment, recognizing Suzanne St. Martin and others as widow in community and as heirs, respectively, and admitting them to possession of the estate of Jean Rufin, deceased, with exception of nonjoinder by Jean Rufin and with supplemental petition by plaintiff, Hypolite Rufin, making Denis Rufin and others parties to the suit, and in which Denis Rufin and others filed exceptions. Judgment against plaintiff, and he appeals. Affirmed.

Charles T. Starkey, of New Orleans, for appellant. E. J. Meral, Roger Meunier, and Emile Pomes, all of New Orleans, for appellees Rufin.

Statement of the Case.

MONROE, C. J. On March 25, 1912, there was filed in the civil district court a petition signed by Suzanne St. Martin, as widow in community, and five other persons, in-

cluding Hypolite and Jean Rufin as children and heirs of Jean Rufin, in which it was alleged that he had died in New Orleans in 1893, that he had been married but once, and that to Suzanne St. Martin the petitioner first named; that of said marriage were born "the following named children," naming the five other petitioners, including Hypolite and Jean and one other who was born on December 25, 1874, and died some months later; and that he left an estate, consisting of his interest in the community which had existed between him and his wife; and praying that the petitioners so named be recognized as widow in community and heirs, respectively, and as such sent into possession of the estate; and judgment was rendered as prayed for. On April 25th following the same parties united in making a sale, for $15,000, of certain real estate, forming part of the succession property the widow renouncing her usufruct thereof. On April 18, 1913, the widow died, and on May 7th an inventory of the property of her succession was taken, in the presence of all the heirs, two of whom, her son and executor, Denis Rufin, and her daughter, Mrs. Bordes, were bequeathed extra portions. Those dispositions apparently gave some dissatisfaction, and on December 16th the heirs united in the execution of an instrument, which contains, among others, the following recitals and stipulations to wit:

"And said appearers further declare that differences have arisen between them relative to said succession, and the settlement thereof, and which they have settled and compromised, and they do hereby settle and compromise the same, on the following basis."

It was then agreed that Denis Rufin should accept $5,000 in cash, in lieu of certain real estate specially bequeathed to him; that the special legacy to Mrs. Bordes should remain undisturbed; that the executor should pay Hypolite Rufin $1,500; and it was declared:

"That the above agreement and stipulations are in the nature of a compromise, and are intended to, and do, constitute a full, complete, and final statement of all the claims and counterclaims which they have, or may have, against each other, connected with, or growing out of, the succcession of their late mother, and that all property, movable or immovable, received by them, or by each of them, should not be brought back into her succession, but should be kept by each of them, and no account whatever should now, or at any time, be taken of them."

The parties also approved the account of the executor in every respect, which included a proposed distribution among the heirs, who thereafter, on January 9, 1914, united in a petition to the court, in which, after reciting the facts, of the death of their mother, the probate of her will, the compromise agreement, etc., they allege that they accept her succession, purely and simply, and pray the court to recognize them as the sole and only children and forced heirs of their mother, entitled to her entire succession save that disposed of by special legacies, and put them in possession of the same, and there was judgment as prayed for. On April 13, 1914, Hypolite Rufin filed the petition which initiated the litigation, the judgment in which has been brought here, on his appeal for review. He therein alleges that he is one of "the four legitimate children" of his parents, the others of that class being his brother Denis, his sister Mrs. Leonie Bordes and his sister Mrs. Leontine Pardou; that "the Jean Rufin, referred to in the judgment of March 25, 1912," is an illegitimate, unacknowledged child of Suzanne St. Martin and an unknown father; that he was born on April 10, 1872, in the Commune de Meillon in France, almost 3 years prior to the marriage of petitioner's parents, which took place at the Cathedral in New Orleans on March 19, 1875; that, if he is a son of petitioner's father, which is denied, he was born out of wedlock, and was never legally acknowledged; that about April 25, 1912, petitioner's mother sold, for $20,000, a certain square of ground which she had acquired with funds

belonging to the estate of Jean Rufin and that on April 26, 1912, she, as widow, and the legal heirs of Jean Rufin, "together with said illegitimate child Jean Rufin," sold, for $15,000, a square which had formed part of the community estate; that the proceeds of the two squares were amicably partitioned, and said illegitimate child, illegally and without any right, received $4,000, receiving, to petitioner's prejudice $1,000 cash; that petitioner did not know that said illegitimate child was an unacknowledged illegitimate child until December 23, 1913, and did not know that petitioner's father was not the father of said illegitimate child until December 23, 1913, and that said child had never been acknowledged or legitimated by Suzanne St. Martin or Jean Rufin, petitioner's mother and father; that for the first 11 or 12 years of his life said illegitimate child, Jean Rufin, was known only by the name of Jean St. Martin; that he made his first communion under the name of Jean St. Martin; that he knew, for the last 30 years, of his bastardy, or illegitimacy, notwithstanding which he fraudulently claimed an undivided one-fifth interest of the estate of petitioner's father and mother; that the judgment herein rendered on March 25, 1912, in so far as it recognizes said illegitimate child, Jean Rufin, as a legitimate child, and as such entitled to an undivided one-fifth of the estate of petitioner's father and mother is an absolute nullity, rendered in contravention of a prohibitory law, and should be set aside, etc.

He prays that Jean Rufin be cited, and for judgment against him for $1,000, with interest, and decreeing the nullity, in so far as it recognizes said Jean Rufin, of the judgment of March 25, 1912. Jean Rufin excepted to the petition on the ground that it failed to pray for the citation of necessary parties, and by supplemental petition Denis Rufin, Mrs. Bordes, and Mrs. Pardou were brought into the case. All of the defendants then pleaded the exceptions, no cause of action, estoppel and res judicata, and there was a trial, upon which the evidence adduced relates mainly, if not exclusively, to the question of estoppel.

Plaintiff, defendant in exception relies entirely upon his own testimony to satisfy the court that, in recognizing Jean Rufin as his brother and coheir as appears in the foregoing statement, he did so in ignorance of facts, or of the fact that he was an "unacknowledged illegitimate child," but he does not pretend to say that his ignorance was attributable to any deception or concealment practiced by defendants. He alleges that Jean Rufin, knowing for 30 years that he was of illegitimate birth, fraudulently participated in the friendly partition among the heirs, but he proves no fraud, and his twin brother, Denis, who like himself is 36 years old, testifies that he and all the family, plaintiff as well as himself, have always known that Jean was born in France; and that their parents were married after they came to this country. As they and the other children were born of the marriage, naturally neither could testify of his own knowledge concerning anything that occurred at that time or for some years afterwards, and no other members of the family, save Jean and the wife of the plaintiff were called as witnesses. Most of the information that we get is therefore derived from family tradition, according to which, and to the testimony of Jean, the father of the family left France, probably, in 1870 or 1871, to escape conscription, and the mother followed a year later. Jean says that he was born in 1871; that his mother was married 3 or 4 years afterward in New Orleans; that he had been left in France, where he lived with his grandparents, until he became something of a boy, possibly 10, or maybe 13, years old; and that he learned about the marriage, etc., after he

came here; that his father, Jean Rufin, deceased, sent money over there for his maintenance, and that he had learned to read everything before he came here. Plaintiff professes not to have known anything about those matters that he has found it decent and respectful to the name of his mother to rake up until December 23, 1913, when, after having his wife write to France upon the subject, he received what is said to be a certificate concerning the registry of the birth of Jean, but it was objected to on the ground that it was not authenticated, and the objection was sustained, though the document was allowed to go in to prove rem ipsam on the statement by plaintiff's counsel that another one properly authenticated would be produced, but no other was produced, and the unauthenticated certificate proves nothing save that in November, 1913, before the "agreement and compromise" was entered into plaintiff began making an effort to obtain documentary evidence of something that had been familiar knowledge to him for many years.

Being asked to give his reason for having his wife write for the certificate, he refused to give it. He testified that he always knew that Jean was born in France; that he had always heard that his mother was married here in 1875. At another time, he says that he obtained that information from his wife; that she told him about the time of the compromise, but that she had known it about 5 years; had been told by Jean's wife. Our conclusion is that the truth in regard to the time when plaintiff became informed as to Jean's status, without having authenticated documentary evidence upon the subject, is to be found in the testimony of his twin brother, Denis, who, testifying against his own pecuniary interest, says that they always possessed that information; that it was well understood in the family.

143 La.—27

## Opinion.

Pretermitting any consideration of the exceptions of no cause of action and res judicata, we are of opinion that the plea of estoppel was properly sustained.

[1] Counsel for plaintiff argues that he has brought his case within C. C. art. 2291, by proving that his client, judicially and otherwise, acknowledged Jean Rufin to be his legitimate brother and coheir, and co-operated with him as such in consequence of an error of fact; that is to say, because he believed him to be something which he was not, his acknowledged, illegitimate, brother, or his legitimate brother, or whatever it may be. But, a judicial confession, and still less a judgment obtained at one's own instance but which also confers rights upon others, is not set aside because of errors of fact which are, in no wise, attributable to the fault of the party to whose prejudice they are sought to be annulled, nor can an error of fact be invoked for such a purpose by one who, being abundantly put on inquiry, obtains or permits a judgment to be rendered without making proper effort to inform himself of the facts.

"The party applying for relief must not have been guilty of laches or negligence. He must exhibit a case where an execution of the judgment would be against good conscience, and it must show matter of which the defeated party could not avail himself in the trial of the former suit, or that he was prevented from availing himself by accident or fraud, or could not have known of before by reasonable diligence." Perry v. Rue, 31 La. Ann. 288; Swain v. Sampson, 6 La. Ann. 800; Norris v. Fristoe, 3 La. Ann. 646; Succession of Corrigan, 42 La. Ann. 70, 7 South. 74; Warren v. Copp, 48 La. Ann. 810, 19 South. 746. It is a good defense to a suit that the contract on which it is based was consummated by deception or fraud. But such averment would not be a valid basis for annulling a judgment obtained without fraud or other ill practices of the judgment creditor." Merchants' Ins. Co. v. Pointer, 22 La. Ann. 621.

[2] Counsel for plaintiff makes the statement in his brief that Jean Rufin knew of his illegitimacy from the time he was 11 or 12 years of age, but that statement must be

based on Jean Rufin's testimony, since the record contains no other information on that subject, and what he testifies to is that he never knew that his parents were married in New Orleans, after leaving him in France until after he came here, having obtained that information, no doubt, as a member of the family, none of which tends to prove that he practiced any fraud or deception on plaintiff, who, having lived in the family for about 30 years prior to the institution of this suit, had opportunities of acquiring all the information that Jean Rufin acquired about himself that were quite as good as those of Rufin, and probably better, since there may have been those who were willing to speak to plaintiff about Jean's status who would not have mentioned so delicate a matter to him.

Counsel then invoke the various articles of the Civil Code concerning prohibitory laws, and the law regulating the devolution of property, but we fail to find that any of them preclude a person who is sui juris from waiving the obstacle of illegitimacy and concurring with his unfortunate brother in the obtention of a judgment putting them in possession, share and share alike, of the estate of their common parents. The brother of the plaintiff, who has not joined him in this suit and who has given testimony to the effect that plaintiff has always known that of which he now pretends to have been ignorant, and the two sisters, who have not even appeared as witnesses in the case, were evidently of the opinion that he whom their parents had publicly recognized as their child, and whom, during all their lives, they had been taught to treat as a brother, should receive from them the consideration of a brother, and, above all, that they should not proclaim an early fault of the dead which, but for some such proceeding as this, would soon be forever buried in oblivion. For the reasons thus assigned, the judgment appealed from is affirmed, at the cost of the appellant.