OVERTON, J.
 

 Marie Louise Kranz died at her home in the city of New Orleans on July 18, 1924. She left a brother, John R. ,Kranz, a sister, Magdalena Josephine Kranz, an interest in some real and personal property, which she held in indivisión with her sister, and an holographic will by which she bequeathed all the property which she might leave at her death to her sister.
 

 Sixty-three days after the death of the deceased, her' sister and brother filed jointly in the civil district court a petition, sworn to by each of them, alleging that the deceased died intestate, and praying that they be recognized as her sole and only heirs and sent into possession of her estate in equal portions. The court, acting upon this petition, rendered judgment recognizing both petitioners as the only, heirs of the deceased and sending mem into possession of her estate in accordance with the prayer of their petition.
 

 After the brother of the deceased, John R. Kranz, and his sister, Magdalena Kranz, had been sent into possession of the decedent’s estate, the brother gave to his sister, in an informal manner, for life or so long as she remained single, the revenues of his half interest in the property of which he had been sent into possession, and, at the same time, advised her that he would permit her to occupy that part of the‘property which consisted of the home that had been occupied by her and,the deceased, without charging her rent for the interest inherited by him therein.
 

 Several weeks later, Magdalena Kranz felt that her brother ought to donate to her his interest in the property, instead of merely giving her, in an informal manner, the right to use the home and his interest in the revenues which the remaining property would produce. When this request was made, John R. Kranz did not know that his deceased sister had left a will and presumed, as alleged both by him and his sister in the petition praying for possession, that the deceased died intestate. At first Kranz seemed inclined to make the donation, but later declined to sign the act. On the day following this refusal Magdalena Kranz, for the first time, informed her attorney that her sister did not die intestate and produced a will, leaving to her all of her sister’s'estate.
 

 John R. Kranz was notified of the existence of the will and it is said that he, at first, consented, to its probate, but the weight of the evidence shows that he did not. Later, he was requested to join his sister in a petition, praying that the judgment rendered sending them into possession of the estate be annulled and that the will be admitted to probate, but he refused to join her in the petition. She then filed a petition in the above-entitled succession, alleging that, since
 
 *549
 
 the rendition of the judgment rendered therein, sending her and her brother into possession of her sister’s estate, the will mentioned had been produced, and alleging that it was her desire to have the judgment rendered set aside, to have the will probated, and to be sent into possession, as universal legatee, of all of the property left by the deceased.
 

 John R. Kranz, in response to this demand, appeared and set up three defenses, one of which is a plea of waiver and estoppel, based upon averments to the effect that his sister, Magdalena Kranz, having represented to the court that the deceased died intestate, and having prayed that she and he be placed in possession of the estate of the deceased, and having procured a judgment accordingly, all at a time when she knew of the existence of "the will which she now presents for probate, waived all of her rights under the will and is estopped from seeking to set aside the judgment, thus procured, and from seeking to probate said will, and furthermore that, having accepted from him the revenues of the interest in the property of which he had been placed in possession by the judgment rendered, and having thereby, with full knowledge of the facts, recognized the validity of that judgment, she is estopped from now seeking to set it aside.
 

 In our view, the case may be disposed of on the plea of estoppel. The will in question was written some seven years before the death of the deceased. It was written in the presence of Magdalena Kranz. At the time it was written, Magdalena Kranz wrote one in favor of the deceased, and put the will written by the deceased in the drawer of a wardrobe which the two sisters possessed. When asked why she had sworn to the petition alleging that her sister had died intestate, when she had knowledge of the existence of her sister’s will, she answered that, at the time she made the affidavit, she was so grieved over her sister’s death, she did not think of the will. When asked if she knew from July 30, 1917, the date of the will, up to July 18, 1924, the date of her sister’s death, of the existence of the latter's will, and. of its whereabouts, she answered in the affirmative. When asked why she had changed her mind about not wanting to remain in possession of the estate, one-half in her name and one-half in her brother’s, she replied that, after she had thought the matter over seriously, she concluded that she should have had the will probated, and accordingly notified her attorney of its existence.
 

 The foregoing evidence, which is a fair summary of that contained in the record on the question here under consideration, satisfies us that Magdalena Kranz, while she was deeply grieved, over her sister’s death, when she alleged that the deceased died intestate and prayed that she and her brother be placed jointly in possession of the estate, nevertheless knew of the existence of her sister’s will, and for some reason, possibly because she did not care for her brother to feel that his sister had willed everything to her or for some other reason, preferred not to produce the will until her brother refused to donate to her his interest in the estate, as recognized by the judgment rendered. ' The case therefore presents the question whether one, who, with knowledge of the existence of a will in her favor, nevertheless petitions the court for a judgment recognizing that the deceased died intestate and placing her, together with the remaining heir of the deceased, in possession of the estate left, share and share alike, as the decedent’s legal heirs, has the right, after obtaining judgment in accordance with her petition, to annul the judgment obtained, merely because of the existence of the will, and'then to cause the will to be probated, making her the universal legatee-of the deceased.
 

 So far as our knowledge extends, we know of no .case in our jurisprudence similar in
 
 *551
 
 its main details to the present one. However,
 
 our
 
 jurisprudence contains cases which announce principles which,. we think, if they are not decisive, are virtually so, of the question here raised. Thus, in the Succession of Carter, 149 La. 189, 88 So. 788, which was a case in which the children of the deceased petitioned the court to be placed in possession of his estate, as his legal heirs, and obtained judgment accordingly, and in which one of the heirs afterwards sought to annul the judgment obtained, at least, in so far as it affected him, on the ground that one of the children was illegitimate, it was said in stating the effect of such a judgment, though not in passing upon a plea of waiver or estoppel, that:
 

 “In this ease, the participation of all the heirs, they being sui juris and being the only persons having an interest in the estate of their father, in the petition to the court that they be recognized as heirs and sent into possession, share and share alike, and the obtention of the judgment in accordance with that petition,
 
 was a most authoritative renunciation Vy each, in favor of all the others, of any right in conflict with those recognized hy the judgment. *
 
 * * (Italics ours.)
 

 And in the .Succession of Rufin, 143 La. 828, 834, 79 So. 421, 423, which was also a case in which the children of the deceased petitioned the court to obtain judgment sending them into possession of his estate, and after having obtained judgment accordingly, one of them sought to annul the judgment, which he was instrumental in obtaining, on the ground that one of the children, recognized by it, was illegitimate, á fact of which he claimed he was not aware at the time he joined his coheirs in alleging the legitimacy of the child, the court, in passing upon the question raised, after stating the plaintiff’s position, as to article 2291 of the Civil Code, said:
 

 “But, a judicial confession, and still less a judgment obtained at one's own instance, but which also confers1 rights upon others, is not set aside because of errors of fact which are, in no wise, attributable to the fault of the party to whose prejudice they are sought to be annulled, nor can an error of fact be invoked for such a purpose by one who, being abundantly put on inquiry, obtains or permits a judgment to be rendered without making proper effort to inform himself of the facts.”
 

 It may be here observed that, in the case from which the foregoing excerpt is taken, the court not only found that no one led the plaintiff into error, but, as a matter of fact, found that he knew of the illegitimacy of the child when he joined the latter in praying to be sent into possession, or, at least, that he had sufficient knowledge to place him upon inquiry, and, the court therefore sustained a plea of estoppel urged against the plaintiff’s attack on the judgment, based upon the allegation of the legitimacy of the child, contained in the proceeding, praying for possession, and upon his act in obtaining the judgment that was based, in part, on that allegation.
 

 From the Succession of Carter, as we have seen, it appears that when one joins others representing that they are the heirs of a person deceased, and prays to be sent into possession of his estate with them, and obtains judgment accordingly, with knowledge of the facts as to the heirship of each, or wijh sufficient knowledge to put him upon inquiry, his act in so doing operates as a renunciation of all rights in conflict with the judgment obtained. And, under similar circumstances, as appears from the Succession of Rufin, one who attacks the judgment rendered, on the ground that one of the alleged heirs was, in fact, not an heir, is estopped from doing so.
 

 The principles announced in the foregoing cases are applicable to the case at bar. When Miss Kranz, with knowledge of the fact that her sister had left a will, represented to the court that the deceased died intestate, leaving her and her brother as hqr legal heirs, and was instrumental in obtaining judgment on that basis, she renounced all rights in con
 
 *553
 
 fliet with the judgment for which she prayed, and when she now produces the will and seeks to annul the judgment, because of the existence of the will, and to have the latter probated, she is estopped from so doing. In fact, the plea of estoppel herein is sustained by article 2291 of the Civil Code, which defines a judicial confession to be “the declaration which the party, or his special attorney in fact, makes in a judicial proceeding,” and which provides, inter alia, that “it amounts to full proof against him who has made it,” and that “it cannot be revoked, unless it be proved to have been made through an error in fact,” and cannot be set aside “on the pretense of an error in law.”
 

 We have examined the authorities cited by counsel for Miss Kranz, but do not find them applicable to the facts in this case. We also tail to find, as contended by ‘Miss Kranz, that her brother ever consented to the probáte of the will.
 

 For the reasons assigned, the judgment appealed from, which is in favor of plaintiff, is annulled and set aside, and the pleas of waiver and estoppel urged are sustained, and the demand of Miss Kranz, the plaintiff herein, is dismissed at her cost in both courts.
 

 O’NIELL, C. J., dissents.