O’NIELL, Chief Justice.
 

 The question in this case is whether a judgment sending the heirs of a deceased person into possession of the estate unconditionally, and thereby closing the succession, is a bar to a subsequent demand for collation.
 

 Mrs. Ludeweka J. Doll died at her residence in Shreveport on December 9,
 
 1939,
 
 leaving as her heirs three daughters, namely, Mrs. Maude Doll Broghan, Miss Loretta Doll, and Mrs. Mary Lou Doll Butler, and four sons, namely, Frank T. Doll, Howard F. • Doll, Charlie Doll and John M. Doll, and a grandson, Howard C. Belcher, who was the only child of a predeceased daughter, Fredericka Doll Belcher.
 

 Mrs. Ludeweka J. Doll possessed a large estate, and during her lifetime divided among her sons and daughters all of her property except a store building in Shreveport, called McCrory’s Store. She left a will in which, after making a special bequest of certain personal property and bequeathing cash legacies to some of her grandchildren, she expressed a desire that her liberty bonds should be divided among her children, and that the building called McCrory’s Store should be rented and the income divided equally among her sons and daughters. The will was probated on January
 
 20,
 
 1940. Thereafter 'the three daughters and four sons and the grandson, all being of the age of majority, filed a joint petition in court, accepting the succession unconditionally, and praying to be recognized as the sole heirs of the deceased, Mrs. Ludeweka J. Doll, and to be sent into possession of her estate as the owners thereof. Accordingly, a judgment was rendered recognizing the petitioners to be the only heirs of the deceased and sending them into possession of her estate as joint owners. The only property specifically described in the judgment sending the heirs into possession of the estate was (1) the undivided half interest in the McCrory building in Shreveport, of which the eight heirs owned
 
 *555
 
 already the other half interest, and of which no valuation was given in the judgment, (2) an undivided half interest in a judgment against a man named Noel Barnes, the half interest being valued at $50, and (3) cash deposited in several banks in Shreveport amounting to $41,515.-76. The judgment especially recognized the eight heirs to be the joint owners of the property described specifically in the judgment, namely, the McCrory building, the $100 judgment against Noel Barnes, and the bank deposits amounting to $41,-515.76. The judgment was rendered and signed in open court on February 8, 1940.
 

 Nearly three years afterwards, that is, on December 5, 1942, four of the heirs of the deceased, namely, Miss Loretta Doll, Howard F. Doll, Mrs. Mary Lou Doll Butler, and Howard C. Belcher, brought this suit against the four other heirs, namely, Mrs. Maude Doll Broghan, John M. Doll, Charlie Doll, and Frank T. Doll, for collation of certain sums alleged to have been received by them from their mother during her lifetime. The plaintiffs demanded of Mrs. Maude Doll Broghan collation of the sum of $18,746.10, of John M. Doll collation of the sum of $29,402.77, of Charlie Doll collation of the sum of $14,-238.94, and of Frank T. Doll collation of the sum of $35,946.47. The plaintiffs averred that if the defendants should be required to collate the sums demanded of them, they, the plaintiffs, were willing to collate the amounts received by them from the deceased Mrs. Ludeweka J. Doll during her lifetime, as follows: Miss Loretta Doll was willing to collate $718.75; Howard F. Doll was willing to collate $8,545.19; Mrs. Mary Lou Doll Butler was willing to-collate $10,366.68; and Howard C. Belcher was willing to collate $10,718.75.
 

 The plaintiffs claimed also in their petition that three of the four defendants received certain sums out of the funds derived from the succession, and that .such funds should be charged against their shares in the succession, respectively, thus: It was claimed that Mrs. Maude Doll Broghan received $718.75 after her mother’s death, out of the funds derived from the succession of her mother; that John M. Doll received $1,486.02 after his mother’s death; and that Charlie Doll received $2,-688.08 after his mother’s death.
 

 The claim of $718.75 against Mrs. Maude Doll Broghan is alleged in the plaintiffs’ petition to be her proportionate share of the fee of the attorney for opening the succession and sending the heirs into possession of the estate unconditionally, as owners. The claim of $1,486.02 against John M. Doll is alleged in the petition to consist of his proportionate share, being $718.75,. of the fee of the attorney for opening the succession and sending the heirs into possession of the estate unconditionally and as owners, and $767.27 for rent of property alleged in the plaintiffs’ petition to belong to them and the defendants in indivisión. The claim of $2,688.08 against Charlie Doll consists of two items. One item is. alleged to be his proportionate share,, amounting to $718.75, of the fee of the
 
 at-.f
 
 torney for opening the succession of the deceased Mrs. Ludeweka J. Doll and obtaining the judgment sending the eight
 
 *557
 
 heirs into possession of her estate unconditionally, as owners. The other item is an alleged loan of $1,969.33, represented by a promissory note for that amount signed by Charlie Doll, dated January 4, 1940.
 

 The three claims which we have referred to, namely, the claim of $718.75 against Mrs. Maude Doll Broghan, the claim of $1,486.02 against John M. Doll, and the claim of $2,688.02 against Charlie Doll, are not demanded as collation, but consist merely of debts alleged to have been incurred subsequent to the death of Mrs. Ludeweka J. Doll, of which the plaintiffs claim that they are entitled to their proportionate share of one-eighth for each of them.
 

 The plaintiffs prayed that each of them should be recognized as the owner of one-eighth interest in the amounts for which they demanded collation, and in the amounts which they claimed were received by the defendants after the death of Mrs. Doll. The plaintiffs prayed also for a partition, either in kind or by licitation, as the court might direct, of all of the property inherited by them and the defendants from the deceased Mrs. Doll, and described in their petition, except the commercial building called the McCrory Store, as to which they asked to have the right reserved, under certain conditions, to demand a partition hereafter.
 

 As the judge of the district court states in his reasons for the judgment dismissing this suit, the plaintiffs’ petition discloses that the judgment which they obtained on February 8, 1940, placing them and the defendants in possession of the estate of the deceased Mrs. Doll, has been executed by the plaintiffs and defendants by their holding the property in indivisión, collecting the rents and dividing the same among them equally, and making certain loans or advances out of the common funds. And, as the judge says, the plaintiffs virtually or in effect admit in their petition that the only purpose or object of this suit — so far as it is a suit for a partition — is to collect and divide among the plaintiffs their share of the sums of money which they claim the defendants should have collated in the succession of the deceased, Mrs. Ludeweka J. Doll.
 

 The defendants filed exceptions of no cause or right of action and pleas of res judicata and estoppel. The exceptions and pleas were all founded upon the one contention that the judgment dated February 8, 1940, rendered on the joint petition of all of the plaintiffs and defendants, recognizing them as the heirs of the deceased Mrs. Doll, and sending them into possession of her estate jointly and unconditionally, and thus closing the succession, was a bar to any demand on the part of any of them thereafter to claim collation from any other of them.
 

 The judge sustained the exception of no cause or right of action because the facts upon which the exception, as well as the pleas of estoppel and res judicata, was founded were admitted or stated in the petition in this suit. The judge declared in his reasons for judgment that he deemed it unnecessary to pass upon the so-called plea of estoppel or the plea of res judicata,
 
 *559
 
 which pleas, as we have stated, were founded upon the same proposition of law on which the exception of no cause or right of action was founded; that is, that the judgment dated February 8, 1940, sending the heirs into possession of the estate of the deceased Mrs. Doll unconditionally, was rendered on the joint petition of the heirs, in which petition none of them claimed collation from any other of them, and that the judgment was a bar to a subsequent demand for collation on the part of any of them.
 

 Collation is the returning to the estate of a deceased person any gifts or advances which any of the descendant heirs may have received by donation or otherwise during the lifetime of the ancestor from whom the heirs inherit. The collation may be made in fact, by actually returning to the succession the property or money received from the deceased during his lifetime, or it may be made by deducting from the inheritance of an heir the amount of his collation in the settlement of the succession. This is explained in article 1227 of the Civil' Code, where it is declared ,that the purpose of the collation is “in order that such property [collated] may be divided together with the other effects of the succession.” The obligation to collate applies only to descendant heirs and only to gifts or advances received by them by donation or otherwise during the lifetime of the ancestor. Rev.Civ.Code, art 1228. It is declared in article 1229 that the obligation of collation is founded upon the equality which must be maintained between or among children and other lawful descendants, who divide the succession of their ancestor, and also upon the presumption that any advances or donations made by an ancestor to his presumptive heirs-during his lifetime are made “in advance-of what they [the presumptive heirs] might one day expect from their [the ancestors’] succession.” For that reason the obligation to collate is not appliable to-what is given or bequeathed by last will or testament, except in the sense that if a direct descendant heir has received a donation during the lifetime of the ancestor,, the heir cannot claim a legacy under the last will and testament of the ancestor without collating, either actually or by taking less, the amount received during the lifetime of the ancestor — unless the donation and the legacy are expressly declared by the donor or testator to- be given as an-advantage over the other heirs, and in addition to the share to be inherited by the donee. Rev.Civ.Code, art. 1228. This of course does not affect the right of a forced heir to demand a reduction of a donation or legacy to the disposable portion. It is provided not only in article 1227 but also in article 1229 of the Civil Code that the object or purpose of collation is that the sum or sums collated shall be divided equally among the descendant heirs, along with the property remaining in the succession of the ancestor at the time of his death. But a demand for collation cannot be made in a suit for a partition of property belonging to co-owners or co-proprietors, and not to- a succession. If the descendant heirs of a deceased person accept his or her succession unconditionally and obtain a judgment sending them into possession of
 
 *561
 
 the estate as owners, and thus close the succession, the heirs are thenceforth co-proprietors of the property theretofore "belonging to the succession — in the same way as if they had acquired their joint •ownership by purchase instead of acquiring it by inheritance. If, thereafter, one of the co-proprietors sues for a partition of the property he cannot demand collation ■of any of his co-proprietors. It is so declared in article 1242 of the Civil Code, thus: “The collation is made only to the succession of the donor.” And in article 1290 it is declared that all of the rules governing the partition of property belonging to a succession are applicable also to .a partition between or among co-proprietors of property not belonging to a succes■sion, “with the exception of that which relates to the collation.” The provisions •of the Code, therefore, referring, respectively, to the partition of property belonging to a succession, and to the partition of property belonging merely to co-proprietors, make it very plain that in a suit for .a partition of property belonging merely to •co-proprietors, and not to a succession, a •demand for collation would be contrary to the provisions of article 1242 and 1290 of the Civil Code.
 

 The jurisprudence is consistent with the provisions of articles 1242 and 1290 of the Civil Code, making the distinction between the partition of property belonging to a ■succession and the partition of property belonging merely to co-proprietors. For example, when, under any of the Constitutions previous to the Constitution of 1879, there were parish courts, having exclusive jurisdiction of probate proceedings, and district courts having jurisdiction in other civil matters, it was held consistently that the parish courts had exclusive jurisdiction of suits for the partition of property belonging to a succession and that the district courts had exclusive jurisdiction of suits to partition property belonging to the heirs as co-proprietors after the succession was closed or settled. The following quotation from the syllabus of the opinion in the case of Woolfolk v. Woolf oik, 30 La. Ann. 139, is directly in point:
 

 “The parish court is without jurisdiction of a suit for partition between the surviving widow and the heirs of the decedent, when it appears that the widow had accepted and disposed of her interest in the community, and that the heirs, who are of age, had unconditionally accepted the succession and been put in possession of its property. In such a case the succession no longer exists.”
 

 In Freret v. Heirs of Freret, 31 La.Ann. 506, referring to the closing of a succession by effect of a judgment placing the heirs in possession of the estate, it was said:
 

 “A succession being thus at an end, the heirs are owners in common of the hereditary effects, and the Second court of New Orleans, being a court of Probates only, is without jurisdiction of a suit for their partition.”
 

 This distinction was said to be settled finally in the case of Gillespie v. Twitchell,
 
 *563
 
 34 La.Ann. 288, from the syllabus of which we quote:
 

 “After a succession has been closed by the homologation of the final account of the administrator, and by the judgment putting the heirs in possession, the Court of Probate has no jurisdiction of a suit in partition, to divide the property between them. The jurisprudence of the State must be considered settled on this point. Re-affirming previous decisions.”
 

 In the case of Duffourc v. Duffourc, 154 La. 174, loc.cit. page 179, 97 So. 391, loc.cit. page 393, in 1923, the court, in holding that a sum of money received by one of the defendants was not subject to collation in the partition suit, proceeded thus:
 

 “ * * * and it is also true that the Civil Code provides that 'collation is made only to the succession of the donor,’ and that the Code', in effect, also, provides that, in partitions among co-owners as distinguished from the partition of successions, collation cannot be exacted. C. C. arts. 1242 and 1290, respectively. Granting, therefore, that this is not the partition of a succession, but that it is one among co-owners — and it has been treated as the latter by all of the parties to this suit— then from every standpoint the amount is not an amount to be collated by force of any article of the Code.”
 

 That decision was referred to with approval in Prichard v. McCranie, 160 La. 605, loc.cit. page 613, 107 So. 461, loc.cit. page 464, thus:
 

 “The present suit for the partition of the same property, into the possession of which these heirs were sent by judgment of the Sixth district court of date October 1, 1921, was filed in said court June 5, 1922. It is clear, therefore, that the succession of Mrs. C. A. McCranie ceased when the heirs were recognized and sent into possession, that the property thenceforth became their common property as owners, and that the present suit is not one involving the division of succession property, but is an ordinary partition suit between co-owners. [Citing the jurisprudence]
 

 “Rules relating to collations and succession partitions are expressly excepted from application to ordinary partitions, which involve only property held in common and can only arise between co-owners of such property. Under articles 1242 and 1290 of the Revised Civil Code, collation cannot be exacted in partitions among co-owners. Duffourc v. Duffourc et al., 154 La. 174, 97 So. 391.”
 

 Again in Mitcham v. Mitcham, 186 La. 641, loc.cit. pages 649, 652, 653, 173 So. 132, loc.cit. pages 135, 136, it was held that collation was demandable only in a suit for partition of property belonging to a succession, and not in a suit for partition of property belonging merely to co-proprietors, thus:
 

 “It is also well settled that rules relating to collations and succession partitions are expressly excepted from application to ordinary partitions which involve only property held in common, and that, under articles 1242 and 1290 of the Revised Civil Code, collation cannot be exacted in partitions among co-owners. Prichard v. Mc-
 
 *565
 
 Cranie, 160 La. 605, 613, 614, 107 So. 461; Duffourc v. Duffourc et al., 154 La. 174, 97 So. 391.”
 

 * * sfs if: *
 

 “In this case the heirs are all of full age, have accepted the successions of their father and mother purely, simply, and unconditionally, and have continued to control the property as owners without any one questioning their right. Under this state of facts there is no succession, it is at an end, and the heirs are co-owners of the property in indivisión.”
 

 This distinction, between a suit for the partition of succession property and a suit for the partition of property belonging merely to co-proprietors, was applied by the Court of Appeal for the First Circuit, in the case of Caraway v. Hebert, 182 So. 164, loc.cit. page 166, thus:
 

 “The succession of Eugene Houssiere was closed, and the heirs were sent into possession of the property by a judgment of court. The five acre tract, as well as the other property of the succession, was thereafter held by the heirs as ordinary co-owners, and a partition of the property held by any or all of the heirs in common would not involve the partition of a succession, but would be governed by the rules and procedure applicable to the partition of property held by ordinary co-owners. Medicis et al. v. Medicis, 155 La. 171, 99 So. 27; Prichard et al. v. McCranie et al., 160 La. 605, 107 So. 461; Mitcham et al. v. Mitcham et al., 186 La. 641, 173 So. 132.”
 

 After the plaintiffs had filed this suit and the defendants had pleaded res judicata, estoppel, and no cause or right of action, the plaintiffs filed a supplemental petition, praying that, if the court should hold that the judgment dated February 8, 1940, placing them and the defendants in possession of the estate of the deceased Mrs. Doll and thereby closing her succession, is a bar to the demand of the plaintiffs for collation, and if the court therefore deemed it necessary to reopen the succession of Mrs. Doll for the purpose of making the collation, then that the succession should be reopened: And, again in the alternative, the plaintiffs prayed in their supplemental petition that, if the court should deem it necessary in order to open the way for the plaintiffs’ demand for collation, the judgment, dated February 8, 1940, should be reformed or annulled and the succession reopened for that purpose.
 

 In Support of this alternative prayer, to have the judgment dated February 8, 1940, reformed or annulled, the plaintiffs alleged that it was not their intention, in obtaining the judgment, to waive, release or renounce any claim for collation, but that, on the contrary, it was the understanding of all parties that the judgment would not operate as a waiver or release or renunciation of any such claim or obligation; that the consent of the plaintiffs to the proceedings which resulted in the judgment placing them and their co-heirs in possession of the estate of the deceased Mrs. Doll, and closing her succession, was induced solely by their understanding and belief, which they believed was the understanding of all parties, that the judgment would not affect the obligations of the defendants, or the
 
 *567
 
 obligations of any of the plaintiffs who might be liable for collation, to collate and account for all advances received by them from the deceased during her lifetime; and they alleged that, but for that belief and understanding, they would not have consented to the judgment. They averred that the relations between them and the defendants were friendly and cordial at the time when they filed their joint petition accepting the estate and closing the succession of the deceased, and that all of them believed that the claims for collation and accounting would be amicably adjusted and paid, or that the plaintiffs would have the right thereafter to demand judicially such collation and accounting. The plaintiffs averred that if the judgment dated February 8, 1940, sending them and the defendants into possession of the estate of the deceased Mrs. Doll unconditionally and closing her succession, ought to have contained a reservation of their claims for collation and accounting, or if the succession should have been kept open for the adjustment and settlement of such claims, the failure to incorporate in the succession proceedings and in the judgment a reservation of such claims, and to keep the succession open for the adjustment and settlement thereof, was an error of law on the part of the plaintiffs.
 

 The plaintiffs finally, in their petition, laid the blame for their alleged “error of law” entirely upon one of the attorneys who is representing them in this suit, and whom they named in their petition — thus:
 

 “That petitioners are not attorneys at law and are not versed in law; that they, as well as [three of] the defendants, John M. Doll, Charlie Doll and Mrs. Maude Doll Broghan, were represented in said succession proceedings by Lewel C. Butler, attorney at law. That the said attorney conducted the said proceedings, and that petitioners relied upon his advice and action in the premises; that in the conduct of said proceedings and in the obtention of the said judgment of recognition and possession the said Lewel C. Butler did not know, understand or believe that the same would operate, or be construed, as a waiver, release or renunciation, in any manner whatever, of the claims for collation and accounting herein made by plaintiffs, but on the contrary, it was the understanding and belief of said attorney that the said proceedings and judgment would not in any way affect, prejudice or impair such rights of petitioners; that, if the said judgment and the proceedings leading up to same should be held, or construed, to operate as barring or precluding in any manner the rights for such collation and accounting as herein asserted by plaintiffs, then and in that case, and in the further alternative, they show that their said attorney made an error of law in not provoking and requiring on behalf of petitioners said collations to be made in the succession of the said Mrs. Ludeweka J. Doll before closing the said succession, or in any event, in not including in said proceedings and judgment a reservation of the rights of petitioners to demand such collation and accounting.”
 

 The theory upon which the plaintiffs claim that the “alleged error of law” of their attorney, in failing to demand collation before closing the succession of
 
 *569
 
 the deceased Mrs. Doll, is a cause for which the judgment should be annulled is that, inasmuch as the judgment was obtained with the consent of all of the heirs, it was not in fact an adjudication, but was merely an agreement or a contract among the' heirs. The plaintiffs therefore invoke article 1846 of the Civil Code, which provides that an error of law may be a sufficient cause for annulling a contract if the error was the only cause or motive, or the principal cause or motive, for making the contract. The plaintiffs do not allege that they or their attorney, in obtaining the judgment dated February 8, 1940, did not know of the alleged obligations for which the plaintiffs are now demanding collation. If the obtaining of the judgment dated February 8, 1940, sending the heirs into possession of the estate of the deceased Mrs. Doll and closing the succession, should be dealt with as merely a contract among the heirs, the alleged error on the part of the attorney in obtaining the judgment would not furnish a cause for annulling the so-called contract. It is declared in article 1826 of the Civil Code: “No error in the motive can invalidate a contract, unless the other party was apprised that it was the principal cause of the agreement, or unless from the nature of the transaction it must be presumed that he knew it.” It is not alleged by the plaintiffs in this suit — and is not to be presumed from the nature of the transaction — that the defendants in this suit were apprised at the time when they and the other heirs obtained the judgment dated February 8, 1940, that the principal cause or motive which induced the plaintiffs in this suit to obtain the judgment dated February 8, 1940, was the erroneous belief of their attorney that the judgment would not bar a subsequent demand for collation. Therefore, treating the obtaining of the judgment dated February 8, 1940, as a contract among the heirs, instead of a judicial proceeding on their part, the alleged error of law, on the part of the attorney who represented the four plaintiffs and three of the defendants in the present suit, in obtaining for them the judgment closing the succession of the deceased Mrs. Doll, on February 8, 1940— in believing that the judgment would not be a bar to a subsequent demand for collation — would not justify an annulment of the judgment.
 

 The petition by which the plaintiffs and the defendants in this case obtained the judgment ‘dated February 8, 1940, was not merely a contract or an agreement among them, but was a judicial proceeding, having for its express object and purpose the placing of the heirs of the deceased Mrs. Doll in possession of her estate and thereby closing her succession. In the Succession of Williams, 168 La. 1, 2, loc. cit. page 8, 121 So. 171, loc. cit. page 173, referring to a judgment sending the widow and heirs of the deceased Williams into-possession of his estate on the joint petition of the widow and heirs, the court said:
 

 “Where one makes a judicial declaration and judgment is rendered in accordance therewith, he cannot, to say the least, ordinarily revoke the declaration and attack the judgment under the pretense of having made an error of law. C. C. art. 2291. Nor does i.t seem to make any dif
 
 *571
 
 ference that the proceeding in which the declaration was made and the judgment rendered was a consent proceeding. Succession of Ruffin, 143 La. 828,
 
 79
 
 So. 421; Succession of Carter, 149 La. 189, 88 So. 788; Succession of Kranz, 162 La. 546, 110 So. 750.”
 

 The plaintiffs in this case cite and rely upon the decision in the Succession of Williams, that the sons and daughters of a previous marriage of Williams had a cause of action to annul a judgment sending them and the widow and the children of the second marriage into possession of his estate. — so far as the judgment erroneously declared that the widow was entitled to the usufruct of that part of the community property which was inherited by the heirs of the first marriage. The error was apparent in the judgment itself, because, according to article 916 of the Civil Code, the widow was entitled to the usufruct of only the share of the community property belonging to her children, and not of the share belonging to the sons and daughters of the previous marriage of her husband. Besides, the judgment was rendered pursuant to a written agreement on the part of the widow and heirs of the deceased Williams, which agreement was annexed to and made part of the judgment, and contained the stipulation that none of the parties should be bound by the proceedings taken except to the extent of the designation of the property which belonged to the community and of that which belonged to the separate estate of the deceased. Because of that stipulation in the agreement this court held that the judgment sending the widow and heirs into possession of the estate was not binding upon the sons and daughters of the first marriage so far as the error of declaring the widow entitled to the usufruct of their share of the com•munity property was concerned. In the present case there was no reservation on the part of the heirs of the deceased Mrs. Doll when they obtained the judgment dated February 8, 1940, ■ sending them into possession of her estate and closing her succession, concerning the effect which the judgment should have.
 

 The plaintiffs rely also upon the decision in Lirette v. Lirette, 176 La. 368, 145 So. 773; but that decision is authority for nothing more than that a plea of res judicata in a suit to annul or to reform a judgment cannot be based upon the judgment sought td be annulled or reformed.
 

 The plaintiffs rely also upon the case of Himel v. Connely, 195 La. 769, 197 So. 424, to support their contention that the judgment which they and the defendants in this case obtained on February 8, 1940, sending them into possession of the estate of the deceased Mrs. Doll, should not bar their demand for collection. In Himel v. Connely the court decided merely that the plea of res judicata and a plea of prescription of five years were not well founded. Himel’s suit was a demand for collation on the part of the defendant, Mrs. Connely, for $8,000 which she had received from her mother during the latter’s lifetime; and in his petition for collation Himel averred that he did not know that Mrs. Connely had received the $8,000 from her mother until about six years after Himel had consented
 
 *573
 
 to the discharge of the dative testamentary executor. In that case the question which is now presented to the court was not tendered for decision. It was so stated in the opinion rendered in the Himel case, 195 La. page 778, 197 So. page 428 — thus: “It is not contended by the defendant that the plaintiff has no right of action because collation is made only to the succession of the one who advanced the money. It is not contended that the plaintiff lost his right to demand collation by consenting to the discharging of the executor and the closing of the succession.”
 

 As far as the property described specifically in the judgment dated February 8, 1940, is concerned, the petition in this suit does not set "forth a cause of action for a partition. The only property described in the judgment is (1st) the McCrory Store property, (2nd) the judgment against Noel Barnes for $100, and (3rd) the cash deposited in the banks in Shreveport. There is no demand in this suit for a partition of the McCrory Store property. The law does not grant a right of action to one of several co-owners of a money judgment to have the judgment sold for the purpose of effecting a partition among the co-owners until an attempt is made to collect the judgment. Rochereau v. Maignan, 32 La.Ann. 45; Holliday v. Holliday, 38 La.Ann. 175. As to the cash in the banks, certainly there is no necessity for a judgment to partition or divide the money among the co-owners. The judgment will not interfere with the right of any of the plaintiffs to demand a partition of any other property that they may own in indivisión with the defendants, provided such a suit for a partition be not coupled with or dependent upon a demand for collation.
 

 The judgment appealed from will not interfere with any right which any of the plaintiffs may have to sue for his or her share of any of the debts alleged to have been incurred by the defendants subsequent to the death of Mrs. Ludeweka J. Doll.
 

 Our conclusion is that the judgment appealed from is correct.
 

 The judgment is affirmed.
 

 ODOM and PONDER, JJ., take no part.