275 So.2d 447 (1973)
Succession of Mrs. Lena Wallace HIGGINS.
No. 5258.
Court of Appeal of Louisiana, Fourth Circuit.
March 20, 1973.
Rehearing Denied April 3, 1973.
*448 Bernard, Micholet & Cassisa, Andrew M. Weir, Metairie, for Adam R. Haydel, Dative Testamentary Executor, appellee.
Nelson & Nelson, John P. Nelson, Jr., New Orleans, for James D. English, heir and appellant.
Philip Gensler, New Orleans, curator ad hoc for absent heirs of William D. English, appellees.
Before REDMANN, STOULIG and BOUTALL, JJ.
STOULIG, Judge.
This appeal involves the disposition of a legacy lapsed by the death of the co-legatee, William D. English, who predeceased his testator mother. The court is called upon to decide the rights of the surviving co-legatee, James D. English, Jr., in the lapsed legacy vis-a-vis those of the children of the deceased legatee, who are now forced heirs by representation in the succession of the testator.
The decedent, Mrs. Lena Wallace Higgins, by olographic will, left her estate, "share and share alike," to James and William English, her only children born of a former marriage. William predeceased her, leaving seven children who are called to this succession by representation of their father. These heirs opposed the distribution of the estate, proposed by the dative testamentary executor, which allocated three-quarters of the estate to James and one-quarter to them.
The trial court maintained the opposition and ordered the executor to "* * * refile said account in accordance with law, i. e. one half of the estate to each of the legatees or the heirs as mentioned in the olographic will under the terms and condition of `share and share alike.'" From this judgment James D. English, Jr., the surviving co-legatee, has devolutively appealed.
The appellant does not pursue accretion under LSA-C.C. arts. 1707 and 1708, it being undisputed by all parties that the legacy of the estate to James and William to "share and share alike" is not a *449 conjoint legacy, but rather a distributive legacy of halves. This determination of the character of the legacy is in accordance with the jurisprudence expressed in the cases of Succession of McCarron, 247 La. 419, 172 So.2d 63 (1965), and Succession of Lambert, 210 La. 636, 28 So.2d 1 (1946).
Appellant also relies on the results of these cases in maintaining the efficacy of his legacy and the distribution of the lapsed legacy of his deceased brother in accordance with the laws of intestacy. On this basis James English, Jr., submits that the proposed distribution of the dative testamentary executor is correct and that he is entitled to three-quarters of the entire estate by virtue of a one-half interest under his own legacy and an additional one-quarter interest from the intestate part of the estate (being one-half of the half share of his deceased brother's lapsed legacy); and further that the forced heirs of the decedent William English are entitled to the remaining undivided one-half of his share, being one-quarter of the estate.
Appellees argue that they are entitled to one-half of the entire estate as successors of their father to his legacy. They contend that this distribution accomplishes the testator's "intention" and that their particular case is distinguishable from McCarron, supra, because they are forced heirs, not collaterals.
It is our impression that the issue presented is res nova, for if there is any jurisprudence apposite to the facts of the instant case it has escaped our research. We are of the opinion that Civil Code Articles 1697, 1709, 1501, 1231, 1228, 1230, 1237, 1235 and 1236 are the controlling laws governing the distribution of this estate.
The death of William, nine years prior to that of this mother, caused the lapse of her legacy to him (LSA-C.C. art. 1697). This lapsed legacy now forms an intestate part of the succession of the decedent and shall devolve upon her legitimate heirs (LSA-C.C. art. 1709). It follows that the decedent's estate, being partially testate and partially intestate, is subject to the laws governing dispositions mortis causa and legal successions, respectively.
Article 1501 permits the donor to favor one or more forced heirs with the disposable portion of the estate, to the exclusion of other forced heirs, without being subject to collation, "provided it be expressly declared by the donor that this disposition is intended to be over and above the legitimate portion." The requirement that the extra advantage be formally expressed is also exacted by Article 1231.
By the very terms of her will, wherein she bequeathed her net estate to her sons "share and share alike," Mrs. Higgins obviously expressed her intention not to favor either of her sons to the prejudice of the other. Accordingly, the surviving son is precluded from maintaining that his legacy is not subject to collation because it was bequeathed as an extra portion. Since the testator did not intend either of her forced heirs to receive an extra advantage, the legacy to James must be collated as required by Articles 1228, 1230 and 1231.
As we have previously noted the succession of the decedent has a dual nature: testate as to the legacy of James and intestate as to the lapsed legacy of William. In this circumstance Article 1237 of the Civil Code affords the surviving son, James, the right to elect to either accept the legacy and renounce the legal succession or to collate the legacy and share as a forced heir in the legal succession.
The rationale of this article is that if James accepts the legacy and renounces the legal succession his status changes from that of a forced heir to that of a legatee with no greater rights than those of a stranger. As such, he could not then be forced to collate since the obligation of collation is restricted to descendants *450 who have a right to a legitimate portion in the succession, as recognized in LSA-C.C. arts. 1235 and 1236. These articles do not affect the right of a forced heir to demand a reduction in the legacy where it impinges on the legitime (LSA-C.C. art. 1237).
Should the legatee fail to renounce his rights in the succession then he must bring his legacy back into the succession (collate) and share therein in the capacity of a forced heir.
Applying this reasoning to the facts in the instant case, in either event, whether James occupies the status of a legatee or forced heir, his share in the estate of his mother is an undivided one-half interest and the heirs of his deceased brother William inherit the remaining one-half interest. This result obtains by virtue of the fact that his legacy under the testament was an undivided one-half interest and as a forced heir he would inherit the same proportion, being one of the two children born to the testator.
Certain cases cited by counsel in support of their respective positions are distinguishable on their facts:
While we subscribe to the jurisprudence expressed in McCarron and Lambert, supra, relative to conjoint legacy, there exists the factual distinction that these cases involved collateral heirs as opposed to forced heirs.
In Succession of Schonekas, 155 La. 401, 99 So. 345 (1924), the bequest at issue involved only the disposable portion and the fact that it was bequeathed to only two of several heirs clearly evidences the testator's intention to favor these legatees with an extra portion.
Doll v. Doll, 206 La. 550, 19 So.2d 249 (1944), treated of the right of a co-owner to demand collation after the rendition of a judgment of possession. Therefore the pronouncement that collation by a descendant is not applicable to a testamentary bequest falls within the sphere of dicta.
The Court in Jordan v. Filmore, 167 La. 725, 120 So. 275 (1929), after discussing the development of the right to collation in the French Code and declaring that collation does not apply to legacies, rendered its discussion dicta by deciding the case on the basis that the testamentary disposition clearly evidenced the legacy was intended as an extra advantage.
While my colleagues are not in accord, I agree in principle with the dicta expressed by Chief Justice O'Niell in Jordan v. Filmore, supra, and Doll v. Doll, supra, that legacies should not be subject to collation. Admittedly certain of our Civil Code articles governing collation do specifically make reference to legacies, thereby creating the incongruous situation of being in conflict with the meaning of the term "collation" as defined by Article 1227. In my opinion the phrase "or otherwise" in said article was not intended to apply to legacies (but to methods by which an advance may be accomplished during the life of the testator other than by donations inter vivos) since there was no reluctance on the part of the redactors of the Code to make specific use of the term "legacy" in the succeeding articles in the collation section. As contemplated by Article 1227, collation encompasses the return of advances whereas dispositions mortis causa are intended as the ultimate distribution of property. However, the resolution of this problem addresses itself to the legislative rather than the judicial process.
For the foregoing reasons the judgment of the trial court is affirmed. All costs of these proceedings are assessed to the succession of Mrs. Lena Wallace Higgins.
Affirmed.