184 So.2d 37 (1966)
Succession of Mrs. Julia Theresa LOGA, wife of George W. DELESDERNIER.
Succession of George W. DELESDERNIER.
Gloria DELESDERNIER, wife of Paul MARCHAND, et al.
v.
ESTATE of Julia LOGA, wife of George W. DELESDERNIER, et al.
Nos. 2077-2079.
Court of Appeal of Louisiana, Fourth Circuit.
March 7, 1966.
*40 Duke & Porterie, Louis B. Porterie, New Orleans, and Luke Petrovich, Buras, for Gloria Delesdernier, wife of Paul Marchand, plaintiff-appellant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Ernest A. Carrere, Jr., George Denegre and Donald P. Endom, New Orleans, for Mark Delesdernier, Paul Delesdernier, Ira Delesdernier, Emma Roig, wife of Paul Delesdernier, Executrix of Succession of George W. Delesdernier, and Delesdernier Estate, Inc., defendants-appellees.
Ellis, Lancaster & King, Charles D. Lancaster, New Orleans, for Shirley Delesdernier, wife of Charles Koehl.
Chester A. Eggleston, New Orleans, curator ad hoc for Beulah Delesdernier, wife of Campbell Keene.
Dart & Dart, Henry P. Dart, III, New Orleans, for Angie Neider, wife of Chester O. Delesdernier, intervenor.
*41 Henican, James & Cleveland, C. Ellis Henican, New Orleans, amicus curiae.
Before REGAN, SAMUEL and BARNETTE, JJ.
BARNETTE, Judge.
These cases were consolidated in the trial court, and the appeals have been consolidated for argument and briefing in this court. They are a part of a series of actions arising out of the succession of Julia Theresa Loga, wife of George W. Delesdernier who died May 14, 1934, and the succession of George W. Delesdernier who died February 1, 1952. They involve rights and claims to numerous pieces of real property in Plaquemines, Jefferson, and Orleans Parishes.
The principal plaintiff is Gloria Delesdernier, wife of Paul Marchand, a granddaughter of Julia Loga and George W. Delesdernier, whose rights of heirship in her grandparents' estates are claimed by representation of her father, Chester O. Delesdernier, who died in 1924. It is not disputed that Gloria and her two brothers, all of whom were minors when their grandmother died, were entitled through representation of their father to share in their grandmother's estate. The two brothers of Gloria were killed in World War II without issue. Gloria and their mother Angie Neider Delesdernier are their legal heirs. In this capacity Angie Neider Delesdernier joined her daughter as a party plaintiff in a part of this litigation.
From judgments maintaining pleas of res judicata and prescription and dismissing plaintiff's suits, Mrs. Marchand has appealed. She is the principal plaintiff and only appellant; therefore, reference hereafter to plaintiff or appellant refers to Mrs. Marchand unless otherwise stated. By order of this court certain attorneys, having a direct interest in the ultimate decision of this court, were permitted to file amicus curiae briefs on the issue of res judicata.
Of eleven children born to George W. Delesdernier and his wife Julia Loga, four died in infancy. Seven lived to maturity, all of whom, with the exception of Chester O. Delesdernier, Gloria's father, survived their mother. Another of the seven, George O. Delesdernier, predeceased his father George W. Delesdernier, leaving no descendants.
After the death of Julia Loga Delesdernier and the opening of her succession,[1] a family corporation was chartered under the name "Delesdernier Estate, Incorporated" with George W. Delesdernier as president and his six living children as incorporators.
The Succession of George W. Delesdernier[2] was opened on March 11, 1952, and by judgment of June 17, 1952, the heirs, being the five living children and granddaughter Gloria Delesdernier Marchand, were recognized and sent in possession of his estate. On June 14, 1957, Gloria filed in this proceeding a "Petition for Collation" joining as defendants her five co-heirs and Mrs. Paul Delesdernier, the executrix.
The object of this proceeding was (1) to revoke the judgment of June 17, 1952, insofar as it terminated the administration; (2) to reopen the succession; (3) to cause a new inventory to be made including certain property alleged to have been omitted; and (4) to order collation from her co-heirs who were alleged to have received from their father certain property through simulated transfers or donations in disguise. On May 1, 1958, a petition was filed in that succession by Angie Neider, widow of Chester O. Delesdernier, claiming rights as mother and forced heir of her two predeceased sons. Her allegations and prayer *42 are substantially as those of her daughter Gloria D. Marchand.
In the suit bearing the title, "Gloria Delesdernier, wife of Paul Marchand v. Estate of Julia Loga, wife of George W. Delesdernier, et al.,"[3] hereafter referred to as suit No. 4665, the plaintiffs are Gloria Delesdernier Marchand and her mother, Angie Neider, widow of Chester O. Delesdernier, and the defendants are the Estate of Julia Loga Delesdernier, the Estate of George W. Delesdernier, the Estate of George O. Delesdernier, the five living children of George W. and Julia Loga Delesdernier, and Delesdernier Estate, Incorporated. This suit was filed on June 2, 1958.
In suit No. 4665 plaintiffs alleged fraud, misrepresentation, forgery, and other irregularities in connection with the succession proceedings of Mrs. Julia Theresa Loga Delesdernier (No. 1043), in which proceeding the tutorship of the minors, Gloria Delesdernier and her two brothers, was included. It concludes with a prayer for nullity of the judgment placing the heirs in possession in the Succession of Mrs. Julia Loga Delesdernier, No. 1043, and for nullity of the sale of the minors' interest in the estate in that proceeding. They also pray for amendment of the final judgments of possession in the successions of George W. Delesdernier and George O. Delesdernier and that collation be ordered to insure their inheritance of the interest due them. There is an alternative prayer for damages in the sum of one million dollars.
A supplemental and amending petition was filed in this proceeding (No. 4665) on October 5, 1960, on behalf of Gloria Delesdernier Marchand alleging other irregularities, amplifying the allegations previously made, and pleading simulation in respect to certain transfers of property sought to be declared null and void. It is further alleged that the purported incorporation of Delesdernier Estate, Incorporated, was stricken with irregularities rendering it a nullity, and that the property purported to have been conveyed to it remains in the succession of Julia Loga Delesdernier (suit No. 1043). Petitioner prays substantially as in the original petition with the further prayer that proceeding No. 1043, Succession of Julia Theresa Loga, wife of George W. Delesdernier, be consolidated with this proceeding and reopened for division of the property with recognition of the rights claimed by her.
To all of plaintiffs' pleadings defendants filed exceptions of res judicata; no cause or right of action; prescription of five, ten, and twenty years; and estoppel. The exceptions of res judicata and prescription (without specific reference to any particular prescriptive period) were maintained, plaintiffs' demands were rejected, and the suits were dismissed. From this judgment (or judgments) the plaintiff Gloria Delesdernier has appealed devolutively. After the appeals were lodged in this court, Mrs. Angie Neider Delesdernier filed in each of the separate proceedings a "Petition of Intervention" in her capacity of administratrix of the successions of Chester N. and Warren W. Delesdernier, claiming to be a necessary party plaintiff, adopting all pleadings and briefs filed on behalf of Gloria Delesdernier Marchand.

I. The Exceptions of Res Judicata
It is necessary at this point to discuss proceeding No. 2767 on the docket of the Twenty-Fifth Judicial District Court, Parish of Plaquemines, entitled "Gloria Delesdernier, wife of Paul Marchand, Jr., v. George W. Delesdernier and Delesdernier Estate, Incorporated." Hereafter we will refer to this as proceeding No. 2767. This is the proceeding which forms the basis for the pleas of res judicata, and therefore has a very important bearing on the issues raised in the later suits.
*43 In the proceeding No. 2767, filed January 31, 1951, the plaintiff Gloria Delesdernier Marchand attacked the private sale authorized by the court in the succession of her grandmother, No. 1043, by which her interest and that of her two brothers[4] in fifteen specific parcels of land was sold to the family corporation, Delesdernier Estate, Incorporated. The minors were represented in that proceeding and sale by their mother, Mrs. Angie Neider Delesdernier, natural tutrix, and their grandfather George W. Delesdernier, their under-tutor, who also represented the corporation as president.
Plaintiff alleged the nullity of the foregoing sale of the minors' interest on several grounds which we will discuss later. She also attacked as a nullity a tax sale of tract No. 13 of the property conveyed to the corporation, which will be more fully discussed below. Her petition concludes with the prayer that the tax sale be declared a nullity and the property vested in the corporation, and then that the sale of the minors' interest in all of the fifteen described parcels of property be annulled and the corporation ordered to reinvest petitioner with her interest therein including the fractional interest claimed as heir of her deceased brothers.
To this petition the defendants George W. Delesdernier and the corporation filed exceptions of no right or cause of action, estoppel, and prescription of ten years acquirendi causa under LSA-C.C. art. 3478, and five years liberandi causa under LSA-C.C. art. 3542.
On May 11, 1951, with written reasons for judgment, the trial judge found the plea of prescription of five years to be conclusive, but also found the other exceptions to be "well taken." The judgment maintained the "exception of prescription" filed by each defendant and dismissed plaintiff's suit.
An appeal to the Court of Appeal, Parish of Orleans (predecessor to this court), was filed and docketed, July 19, 1951. No steps were taken thereafter to prosecute the appeal; and on May 13, 1957, the appeal was dismissed under authority of LSA-C.C. art. 3519, as amended by Act 615 of 1954. Marchand v. Delesdernier, 95 So.2d 693 (La.App. Orleans 1957). Writs were refused October 8, 1957. Thus the judgment of the district court of May 11, 1951, became final. In the meantime the defendant George W. Delesdernier died on February 1, 1952.
The plea of res judicata based on this judgment was maintained below and is one of the issues before us on this appeal. We will dispose of this question before discussing the other issues.
There can be no question that the district court judgment of May 11, 1951, in suit No. 2767, is a final judgment. It is contended on behalf of plaintiff-appellant, that inasmuch as George W. Delesdernier, one of the defendants in that suit, died while the appeal was pending and no party defendant was joined or substituted in his stead, that the judgment of the appellate court "rendered against [him] * * * is an absolute nullity," citing numerous authorities. The authorities relied upon pronounce sound principles of law but are not apposite to the case before us. Reference to a "judgment" for or against George W. Delesdernier by the appellate court on May 13, 1957, is unfounded and misleading. The appellate court did not render any judgment for or against the litigants on the merits of the suit. It merely entered a decree or order dismissing the appeal for the reason that it had been abandoned. The effect of this was that the judgment of the district court was final as of the date of its rendition just as though no appeal had been taken. We dismiss this contention *44 as being without merit. LSA-C.C. art. 3519.
We must now consider the extent, if any, to which the judgment in suit No. 2767 is decisive of and stands in bar of the issues raised by the later suits. We look first to LSA-C.C. art. 2286 which provides as follows:
"The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality."
It has been held on numerous occasions by the courts of this state that there must be a concurrence of all of the conditions set forth in this article for res judicata to be applied as a bar to subsequent action.[5] We will therefore consider (1) the thing demanded, (2) the causes of action upon which the demand is founded, and (3) the identity of the parties.
(1) The demands in suit No. 2767 were:
(a) The annulment of a tax sale recorded in Conveyance Office Book 107, Folio 14, and for the return of the property described to Delesdernier Estate, Incorporated.
In suit No. 3005, Succession of George W. Delesdernier, this same demand is made by Gloria Delesdernier Marchand in Article VII of her second amended petition for collation.
(b) That after annulment of the foregoing tax sale and return of the property to the corporation, the sale of her interest in all the property be declared a nullity, and the corporation be then ordered to reconvey to her all her interest in the property described in detail, consisting of fifteen parcels, in which her interest had been sold under court order in the succession proceedings of her grandmother, No. 1043, when she was a minor 9 years of age.[6]
In suit No. 3005 this demand is reasserted in her first and second supplemental petitions specifically and also by reference wherein she did "reaver as though copied herein all the allegations heretofore set forth in her claim against the decedent [George W. Delesdernier] in proceedings No. 2767 * * *."
In suit No. 4665 against the estates of Julia Loga and George W. Delesdernier, their heirs (named individually) and the corporation, she again asserted the nullity of the transfer of her interest in her grandmother's estate to the corporation and demanded its return and the reinvestment of her rights therein.
It is our opinion, and we so hold, that the demands in suits Nos. 3005 and 4665 for an annulment of the tax sale, for a declaration of nullity of the sale of the minors' interest to the corporation, and for the return to her of all her interest in the fifteen described parcels of land coming to her from her grandmother's estate, are the same as the demands in suit No. 2767. We wish to emphasize at this point that we are not overlooking the fact that additional demands have been made in the later suits, which we will discuss below.
*45 (2) The causes of action upon which the plaintiff's demands were founded in suit No. 2767 were:
(a) Her rights as an heir in her grandmother's succession by representation of her father, predeceased.[7]
(b) That the corporation was organized for the purpose of acquiring her interest in her grandmother's estate fraudulently.
(c) That the court order authorizing the sale was "null and void" because the corporation was nonexistent when the order was given.
(d) That the corporation was organized to effect a partition and sale of her interest in a manner constituting fraud.
(e) That the sale was null and void for the reasons that no family meeting was held and that the under-tutor had a conflicting interest.
All these alleged causes of action were realleged and amplified in the later suits, Nos. 3005 and 4665. In her amplification of the foregoing allegations, she has asserted additional causes of nullity and irregularities in the tutorship proceedings (which we discuss more fully below) and in the formation of the corporation in an effort to bolster her basic charge of fraud against her grandfather and those who acted in concert with him in fraudulently and unlawfully effecting the transfer of her property rights, while a minor, to the family corporation. We fail to see in any of these allegations anything which changes the nature of her basic causes of action, namely, breach of a fiduciary duty and fraud, and we hold, that the causes of action upon which the demand was founded in suit No. 2767 are the same causes of action upon which the same demand is founded in suits Nos. 3005 and 4665, except the cause of action founded upon the nullity of the tutorship proceeding.
As we have pointed out above, the cause of action in No. 2767 was fraud and misrepresentation of her interest as a minor by her tutrix and under-tutor, principally, her grandfather who was her under-tutor and also president of the corporation to which her property rights were sold, he, the grandfather, having a conflicting interest with her, the minor, in that sale.
In addition to her allegations of fraud plaintiff alleged in suit No. 2767 that the corporation was not formed until January 29, 1935, although the sale of her property rights to it was on January 23, 1935. The sale, therefore, was to a nonexistent entity. Further, she alleged the nullity of the court order authorizing the sale on the ground that no family meeting was held and that it was a private sale "without subjecting the property to a valuation determined by an open market." These latter allegations were made to further support her principal cause of action, namely fraud.
Counsel for plaintiff-appellant and the counsel who appear herein as amicus curiae strenuously contend that the cause of action upon which the foregoing demands were made in No. 2767 were not the same as that upon which the demands are made in the later suits. In their briefs they confuse "demands" with "causes of action" upon which the demands are made. We have already stated that there are new or additional demands (for example, collation) in the other suits to which we will address ourselves later. The alleged new and different causes of action (as distinguished from new demands) which they point out in their briefs are:
"1) That at the time that the order was signed authorizing Delesdernier Estates, Inc. to acquire the minors' interest, the minors were domiciled in Orleans Parish and not in the Parish of Plaquemines *46 where their tutorship proceeding had been improperly conducted. * * *[8]
"2) That the sale of the minors' interest contained forged signatures, erasures and irregularities of signatures and there was an absence of the necessary witnesses thereon. * * *
"3) That the natural tutrix of Cloria Delesdernier Marchand agreed to the sale of the minors' interest solely as the result of having been misinformed by the under-tutor and his counsel to the effect that a minor could not be a shareholder in Delesdernier Estates, Inc. * *
* * * * * * *
"5) That the Articles of Incorporation of Delesdernier Estates, Inc. were null and void and, therefore, the said corporation was not qualified to acquire the minors' interest in the said properties. * * *
* * * * * * *
"9) That Delesdernier Estates, Inc. was a nullity because its charter was not in notarial form and, therefore, it was null and void, in addition to having been knowingly forged and fraught with irregularities. * * *"
We have examined with painstaking care all the pleadings in the several suits and all the contentions made by counsel for plaintiff-appellant and amicus curiae; and, with the exception of the plea of absolute nullity in the tutorship proceeding and the order emanating therefrom, we are unable to find therein any new, different, or additional allegations of any cause of action for the demand, insofar as the demand is the same in the several suits.
We hold these so-called new or different alleged causes of action, except the allegation of absolute nullity in the tutorship proceeding, to be only an amplification of the causes of action upon which the demands in suit No. 2767 were made. They present nothing new and are, at most, additional reasons for the same allegations of fraud and breach of duty by the tutrix and undertutor in their representation of the minors' interest. It is an inescapable conclusion that the cause of action is fraud and breach of duty. All the additional allegations of irregularities in the tutorship proceeding and in the formation of the corporation do not allege a different fraud but additional reasons upon which the conclusion of the fraud, originally pleaded, was reached.
(3) This brings us to an examination of the third element required in LSA-C.C. art. 2286, "* * * the demand must be between the same parties, and formed by them against each other in the same quality."
The parties to suit No. 2767 and the quality in which they were joined were:
(a) Plaintiff-Gloria Delesdernier, wife of Paul Marchand, Jr., as heir of her grandmother and of her two brothers.
(b) Defendants-George W. Delesdernier, individually, and as president of Delesdernier Estate, Incorporated; and Delesdernier Estate, Incorporated.
In proceeding No. 3005, The Succession of George W. Delesdernier, the parties and the quality in which they are joined are:
(a) Plaintiffs-Gloria Delesdernier Marchand, as heir of her grandparents, her two brothers, and her uncle, George O. Delesdernier; and Angie Nieder, widow of Chester O. Delesdernier, as heir of her sons.
(b) Defendants-Mark, Beulah, Paul, Ira, and Shirley Delesdernier, all as heirs *47 of George W. Delesdernier, and all as collateral heirs of George O. Delesdernier; and Mrs. Paul Delesdernier, as executrix of the succession of George W. Delesdernier.
In proceedings No. 4665, Gloria Delesdernier, wife of Paul Marchand, Jr., et al. v. Estate of Julia Loga, wife of George W. Delesdernier, et al., the parties and the quality in which they are joined are:
(a) Plaintiffs-Gloria Delesdernier Marchand, and Angie Nieder Delesdernier, in the same capacity in which they appear in No. 3005.
(b) Defendants-Mark, Beulah, Paul, Ira, and Shirley Delesdernier, and the succession of George O. Delesdernier, all as heirs of Julia Loga Delesdernier and George W. Delesdernier, and all as officers, stockholders, and directors of Delesdernier Estate, Incorporated; the succession of Julia Loga Delesdernier; the succession of George W. Delesdernier; and Delesdernier Estate, Incorporated.
By supplemental petition in suit No. 3005, proceedings Nos. 4665 and 1043 were consolidated with 3005.
The record in No. 1043, filed herein under our docket No. 2077, Succession of Julia Loga, wife of George W. Delesdernier, does not contain any petitions or defensive pleadings, but it does contain a copy of the court's reasons for judgment in all the consolidated cases, and the order of appeal and bond.
Whatever right or defense George W. Delesdernier had in suit No. 2767, and whatever right flowed therefrom to plead res judicata has passed to his succession and heirs. They stand in his place as his representatives in answer to the plaintiff's demands. It is a mere fiction to assert that they are different parties, and no legal distinction can be made by which it can be said that the third requirement of LSA-C.C. art. 2286 has not been met. Hargrave v. Mouton, 109 La. 533, 33 So. 590 (1903); Givens v. Arcadia Cotton Oil Mill & Mfg. Co., 160 So. 845 (La.App.2d Cir. 1935).
We now return to a discussion of the cause of action with particular reference to the alleged nullity of the tutorship proceeding.
As stated above counsel for appellant and amicus curiae have raised a very serious question of nullity of the tutorship proceeding conducted under the same docket number and title of the Succession of Julia Theresa Loga Delesdernier. It is pleaded (and for consideration of exceptions the pleadings are accepted as true) that when the petition to open the succession of Mrs. Delesdernier was filed, and subsequently in the same proceeding when the natural tutrix applied for and obtained letters of tutorship, it plainly appeared on the face of those petitions that the domicile of the minors was in the City of New Orleans. It is alleged that sometime after the orders were signed and the minors' property sold to the corporation, the words "City of New Orleans," appearing in two places as the domicile of the minors and their mother, were erased, and the words "Parish of Plaguemines [sic]" were written over the erasure in ink. An examination of the original pleadings in proceeding No. 1043 seems to verify this pleading. It is alleged that the physical alteration of the record took place after September 14, 1938, on which date an order was signed granting permission to withdraw the record for title abstract purposes. The plaintiff points out, as being of significance, that immediately thereafter, on September 27, 1938, on petition of the tutrix an order was signed transferring the tutorship proceedings to the jurisdiction of the Civil District Court for the Parish of Orleans.
In this petition, signed under oath by "Mrs. Chester O. Delesdernier" as natural tutrix, it is alleged that at the time of her appointment she and the minors were domiciled in the Parish of Plaquemines, but that since that time they had transferred their domicile and residence to Orleans.
*48 This allegation under oath would operate as a bar in estoppel against Mrs. Delesdernier personally, but the minor children are not estopped by her allegation from proving its falsity. We discuss this more fully below in connection with the plea of estoppel.
The articles of the Civil Code and Code of Practice, which have since been replaced by Article 4031 of the Code of Civil Procedure but which were in effect when the tutrix was appointed in the instant case, clearly required the appointment to be made by the court of the minors' domicile. The pertinent part of Article 307 of the Civil Code provided:
"The appointment, recognition or confirmation of tutors must be made by the judge of the parish where the minor has his domicile, if he has a domicile in the State * * *." (Emphasis added.)
The jurisprudence holds that an appointment by any other court is a nullity. Robinson v. Scharfenstein & Son, 148 La. 364, 86 So. 915 (1921); Succession of Vennard, 44 La.Ann. 1076, 11 So. 705 (1892).
LSA-C.C. art. 12 reads as follows:
"Whatever is done in contravention of a prohibitory law, is void, although the nullity be not formally directed."
If therefore the plaintiff's allegations are proven, the appointment of her tutrix by the court of Plaquemines Parish would be void for lack of jurisdiction, and any act performed by the tutrix emanating from that appointment or order of that court would be a nullity.
These allegations of nullity are not directed at the succession of Mrs. Julia Theresa Loga Delesdernier, and are not the basis of a cause of action to attack the judgment therein. They are a serious attack on the tutorship proceedings and constitute a different cause of action from any upon which the demand was founded in suit No. 2767. Therefore, because of this new and different alleged cause of action, we hold that the second requirement of LSA-C.C. art. 2286 has not been met, and the plea of res judicata cannot be maintained insofar as the demand founded upon this cause of action raises a new issue for judicial determination.
We hold that insofar as the plaintiff's demands in proceedings Nos. 3005 and 4665 seek the annulment of the tax sale of the property referred to as tract No. 13 and particularly described in Article XII of her petition in proceeding No. 2767, and insofar as her demands in proceedings Nos. 3005 and 4665 seek annulment of the sale of her interest in the 15 tracts or parcels of property described in paragraph V of her petition in proceeding No. 2767, founded upon any alleged cause of action except the nullity of the tutorship proceeding and the order issued therein for the sale of the minors' property, the plea of res judicata is valid and must be maintained; but it is overruled insofar as it would stand in bar of her demand founded upon the alleged nullity in the tutorship proceeding.
In proceeding No. 3005, Succession of George W. Delesdernier, in addition to the demands which were previously made in No. 2767, Gloria Marchand demands and prays:[9]
(1) For judgment annulling the judgment of possession and reopening the succession.
(2) For consolidation with proceeding No. 1043, Succession of Mrs. Julia Theresa Loga Delesdernier and for reopening that succession.
(3) For annulment of the sale by George W. Delesdernier of February 11, *49 1935, by which he transferred his one-half community interest in the property owned by him and his deceased wife to Delesdernier Estate, Incorporated, charging simulation and other nullities.
(4) For annulment of certain sales of property from George W. Delesdernier to several of his children on the ground of simulation and donations in disguise.
(5) For recognition of certain property bought by George W. Delesdernier as agent for, and placed in the names of, certain of his children, as property belonging to his estate.
(6) For consolidation of proceeding No. 4665 and for recognition of all the property rights claimed therein.
(7) For judgment declaring Delesdernier Estate, Incorporated, to be a nullity and all the property standing in its name deemed to belong to the successions of George W. and Julia Loga Delesdernier.
(8) For inclusion of certain property alleged to have been omitted from the inventory in the succession No. 3005.
(9) For collation from all her co-heirs in both successions.
(10) For an accounting of all revenues received by her co-heirs from property claimed by her.
(11) In the alternative, for damages in the amount of $1,000,000.
In most of the foregoing demands Mrs. Angie Neider Delesdernier, by supplemental petition, joined her daughter as co-plaintiff. These additional demands are not barred by res judicata, having not been at issue and adjudged in suit No. 2767.
In proceeding No. 4665,[10] judgment is sought against both estates of her grandparents; the estate of her uncle George O. Delesdernier; all the Delesdernier heirs, individually and in solido; and the corporation. The original petition prays for judgment setting aside the sale of the minors' interest in proceeding No. 1043, which was previously sought in suit No. 2767, with the additional prayer that the judgments of possession in the successions of George W. Delesdernier and George O. Delesdernier be amended accordingly, recognizing her interest in the property therein; and, in the alternative, it prays for damages in the sum of $1,000,000. By supplemental and amended petition, Gloria D. Marchand repleads in substantially the same manner all the allegations and demands already pleaded in her petitions in proceeding No. 3005. Therefore, to the extent that the demands in that suit, No. 4665, are different from those in No. 2767, as pointed out above, the plea of res judicata cannot be maintained.

II The Pleas of Judgments of Possession as a Bar to Demands for Collation
It is firmly established in the jurisprudence of this State that collation cannot be demanded after a succession has been closed by a judgment sending the heirs in possession. Succession of McGeary, 220 La. 391, 56 So.2d 727 (1951); Doll v. Doll, 206 La. 550, 19 So.2d 249 (1944). If, however, there are nullities in the succession proceedings and the judgment therein is attacked and set aside because of those nullities, the right to demand collation would not be precluded by the former judgment. Obviously, if the judgment of possession is a nullity, legal effects would not flow from it.
Plaintiff here has alleged many nullities, not in the succession proceedings attacked, but in acts of purported transfer of certain property, the formation of the family corporation, and her tutorship proceedings. These alleged acts of nullity might be reasons or causes of action upon which to demand collation if there had been *50 no judgment of possession, but they do not strike at the validity of the succession proceedings themselves. We find no allegation in any of the numerous pleadings in these consolidated cases setting forth a cause or right of action to set aside or annul the judgments sending the heirs in possession in either succession. We must hold, therefore, that the plaintiff has no cause or right of action to demand collation in either succession.
Plaintiff has alleged, however, that certain property rightfully belonging to the succession of her grandfather George W. Delesdernier was omitted, not included in the inventory, and to this extent the succession should be reopened in order that the omitted property might be distributed among his heirs in their just proportion. This does not imply a nullity, but rather an incompleteness in the succession proceedings and an amendment to the judgment of possession would be in order. Express authority for this procedure is found in LSA-C.C.P. art. 3393. Therefore, plaintiff should have an opportunity to point out such omissions on remand and petition for a supplemental or amending judgment of possession.
In the recent case of Succession of Webre, 164 So.2d 49 (La.App. 4th Cir. 1964), and 247 La. 461, 172 So.2d 285 (1965), we had before us a suit by certain heirs of the decedents who, as in this case, sought to force collation from co-heirs. It was alleged that defendants had been favored by their parents over the other children by the transfer to them of certain property. It was alleged in that case very much as it has been alleged here that the purported sales to the favored heirs were absolute nullities, "simulations," or, alternatively, "donations in disguise." In this Court's opinion in that case we said:
"In the petition we find the allegation that the purported acts of sale were `pure simulation' and `were "fake" sales * * * made purely for the purposes of convenience * * *.' In their brief and argument before this Court, plaintiffs have taken the firm position that the acts in question were donations in disguise, and it is in this meaning that they have attacked them as simulated. There is a distinction to be made between a pure simulation denounced by LSA-C.C. art. 2239 and an instrument which purports on its face to be one thing but is in fact something else in disguise. A pure simulation is of no effect whatever; it is as though it were never done; it has no meaning; it conveys nothing. If the acts in question were pure simulations, that is, not intended by the parties to be a conveyance by deed or otherwise, the property in question has never left the purported grantors and hence remains in the successions of the decedents for the benefit of all heirs.
"This was not the state of facts in the Labarre case, nor do plaintiffs assert it in this case. No mention has been made of this distinction in argument or brief, and we are of the opinion that it was mere coincidence that the term `pure simulation' was used in plaintiffs' petition. The key to this question is the intent of the parties. There is no allegation in the petition from which we can assume that plaintiffs had any other idea except that the grantors intended to divest themselves of the property in question. They allege that the purported sales were `* * in fraud of their rights * * *.' They could only have been defrauded by the passing of the property from the successions of decedents. This negates the idea of a pure simulation where nothing passes. Nothing in plaintiffs' argument or brief contradicts this interpretation we have placed on their pleadings. The most that can be said of this allegation is that it is a conclusion of law and not supported by allegation of facts. We do not find it necessary, therefore, to decide this question.

*51 "The plaintiffs have pleaded simulation in its broader sense, meaning that the acts in question were not what they purported to be on their face but donations in disguise. If they were donations in disguise, the property passed from the donors and can form no part of their successions unless brought back into the mass through collation. It is our opinion therefore that plaintiffs primary action cannot be maintained." 164 So.2d at 52. (Emphasis in the original.)
Writs were granted, and the case was heard and decided by the Supreme Court, which said:
"In Article 11, the petition further alleged:
`That subsequent to the aforesaid purported acts of sale, and particularly during the month of August, 1941, it was freely admitted by the defendants and the decedent, Mrs. Ulyssia Landry, widow of Louis Robert Webre, that the said sales were "fake" sales and that they were made purely for the purposes of convenience and were not bona fide sales.'
"Plaintiffs prayed that the acts of sale be declared null, void, and of no effect. In the alternative only, they prayed that the defendants be ordered to collate the property to the successions of the decedents.
"After an analysis of the pleadings, the Court of Appeal concluded that the plaintiffs had alleged no ground for the primary demand of nullity but only a basis for collation. The Court held that the demand for collation had prescribed under the ten year prescription of Article 3544, LSA-C.C. since the suit had been filed more than ten years after the death of Louis Robert Webre.
"We do not agree with this construction of the petition. Although the petition is inartistically drawn, the allegations are sufficient to admit proof that the act of sale was a sham or that the sale was at a very low price or that it was a donation in disguise.
* * * * * * *
"The demand in simulation is directed to a feigned, or pretended, sale. Such a sale has no real existence. The true intention of the parties is that no transfer take place, the property remaining that of the supposed seller and no price being actually paid. The sale is a sham. Since the property has never left the patrimony of the ostensible seller, a simulated sale is an absolute nullity.
"We said in Spiers v. Davidson, 233 La. 239, 96 So.2d 502:
* * * [A] simulated contract is one which has no substance at all, or is purely fictitious and a sham, an act of mere pretense without reality. Such a contract, although clothed in concrete form, is entirely without effect and may be declared a sham at any time at the demand of any person in interest.'
"An action to annul a simulated contract under Article 2239, LSA-C.C. is imprescriptible." 247 La. at 468, 469, 471, 472, 172 So.2d at 287, 288, 289.
In the case at bar, as in the Webre case, the emphasis in plaintiff's pleadings is on collation. Her reference to simulation is confused throughout her pleadings with the term "donation in disguise." We may borrow the phrase of the Supreme Court and say her petitions are "inartistically drawn." Lest we fall into the same error here that we did in Webre, by brushing aside this allegation of simulation as not being a serious pleading, we will follow the decision of the Supreme Court in that case and now examine the pleadings more carefully to determine if the issue of simulation has been sufficiently pleaded to allow plaintiff her day in court on that issue.
*52 In her initial pleading, "Petition for Collation," filed in the Succession of George W. Delesdernier, No. 3005, plaintiff made no reference to simulation or retention of possession or usufruct. There was no such reference in her supplemental petition in that proceeding. However, in the prayer to her "Second Supplemental and Amended Petition," plaintiff asked that all sales referred to in all petitions filed in the proceeding be declared fraudulent, simulated transfers and absolute nullities. Moreover, in the same proceeding, she alleged that George W. Delesdernier retained a usufruct and control, and exercised ownership of certain property he purportedly sold to other members of the family.
In suit No. 4665, plaintiff alleged in her amended complaint, in respect to three pieces of property, that George W. Delesdernier had retained a usufruct after purportedly selling the property to three of his sons. In her prayer in the same pleading, plaintiff also asked that the court declare the transfers to be fraudulent, simulated transfers and declare that the property remains in the succession of George W. Delesdernier.
LSA-C.C. arts. 2239 and 2480 are pertinent. They provide:
"Counter letters can have no effect against creditors or bona fide [emphasis in the original] purchasers; they are valid as to all others; but forced heirs shall have the same right to annul absolutely and by parol evidence the simulated contracts of those from whom they inherit [emphasis added], and shall not be restricted to the legitimate [legitime]." LSA-C.C. art. 2239.
"In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale." (Emphasis added.) LSA-C.C. art. 2480.
We concede that here the plaintiff has based her case primarily on a claim for collation, and only secondarily, or as an afterthought, has the issue of simulation been raised, whereas in the Webre case the Supreme Court found that the nullity of the deeds was the primary plea and the demand for collation, alternative or secondary. This, however, is of no great significance. The "theory of the case doctrine" has been rejected by our courts, and, according to the comment under LSA-C.C.P. art. 2164, that article was drafted to remove all doubt of this intent. We conclude, therefore, under this article, and the authority of the Webre case, that plaintiff has sufficiently pleaded the issue of simulation, and justice requires that she have her day in court to prove her allegations.
The judgment of possession in the Succession of George W. Delesdernier, No. 3005, was signed and filed on June 17, 1952. Plaintiff's "Petition for Collation" was filed in that proceeding, June 14, 1957. From this fact it is argued that she is within the prescriptive period of five years set out in LSA-C.C. art. 3542. We do not attach any importance to this since we have held that plaintiff has not attacked the judgment of possession in the succession as a nullity. Her attack, as we have pointed out above, is on certain acts relating to property which she claims should have been included in that judgment, but which were omitted.
Since simulated sales are absolute nullities and imprescriptible, and since we have held that plaintiff has set forth a cause of action on that issue and that collation cannot be demanded after the judgment of possession, we need not discuss the exceptions of prescription pleaded herein on the issue of collation. Prescription, as it relates to other issues is discussed below.
We have examined all the pleadings in an attempt to determine as best we can from *53 the repetitious allegations the extent to which simulation has been pleaded in regard to various sales or transfers of property, and have set out the pertinent allegations below. There may be others which have escaped our notice. Therefore, the following listing is not necessarily intended to be exclusive, but should be a guide to the trial court when and if the trial on this issue is reached on remand.
Plaintiff's attack on the ground of simulation is directed at the sale by George W. Delesdernier to Delesdernier Estate, Incorporated, of all his undivided one-half or community interest in the 15 tracts of property described in plaintiff's petition in No. 2767, and also at the following sales or transfers by him:
(1) To Mark, George O., and Shirley I. Delesdernier, dated November 14, 1931, registered in Conveyance Office Book 72, Folio 110; October 29, 1931, registered in Conveyance Office Book 72, Folio 106; August 24, 1931, registered in Conveyance Office Book 72, Folio 114 of the records of Plaquemines Parish, all of which is referred to as Robert M. White Succession property.
(2) To Ira L. and Paul Delesdernier, dated December 5, 1950, registered in Conveyance Office Book 150, Folio 339, Parish of Plaquemines.
(3) To Ira L. Delesdernier, Sr., dated October 13, 1948, registered in Conveyance Office Book 136, Folio 486, Parish of Plaquemines.
(4) To George O. Delesdernier, tax sale by the Sheriff of Plaquemines of property assessed to Eli Jones, sale dated September 27, 1937, registered in Conveyance Office Book 86, Folio 105.
(5) To Shirley Delesdernier Koehl, Paul, Ira, and Mark Delesdernier and Beulah Delesdernier Keene, dated October 14, 1946, registered in Conveyance Office Book 122, Folio 403, Parish of Plaquemines.
(6) To Mark Delesdernier, dated August 23, 1948, registered in Conveyance Office Book 136, Folio 42, Plaquemines Parish.
(7) To Ira L. Delesdernier, dated July 13, 1950, registered in Conveyance Office Book 146, Folio 200, Plaquemines Parish.
(8) To Paul Delesdernier, dated July 13, 1950, registered in Conveyance Office Book 146, Folio 196, Plaquemines Parish.
(9) To Ira L. and Paul Delesdernier, dated August 17, 1951, registered in Conveyance Office Book 155, Folio 576, Parish of Plaquemines.
The Succession of Mrs. Julia Theresa Loga Delesdernier, No. 1043, has been consolidated with proceedings Nos. 3005 and 4665 and joined as a defendant in certain aspects of plaintiff's demands. In proceeding No. 4665 plaintiff has alleged that the original petition of probate in No. 1043 was null and void and that the proceedings therein were a nullity. As pointed out above the allegations of nullity therein relate not to the succession, but to the tutorship conducted in that proceeding. She prays that the judgment of possession be set aside and seeks a new administration. Not only has she failed to allege a cause or right of action, but her attack on the judgment sending the heirs in possession in that succession, having been made more than five years after attaining majority, is clearly barred by the prescription of five years under LSA-C.C. art. 3542.
In proceedings Nos. 3005 and 4665, plaintiff Gloria D. Marchand prays alternatively for damages in the sum of $1,000,000. Obviously faced with certain defeat of this claim, sounding in tort, by application of the prescriptive limitation of one year under LSA-C.C. art. 3536, plaintiff alleged in No. 3005 that she had been misrepresented in her previous litigation and in the opening of her grandfather's succession by her attorneys, and that it was "only in the last several months" that she had been *54 advised "of the existence of rights" demanded in that suit. This attempt to take this alternative phase of her case out of prescription appears to be without merit. Under our law, ignorance of a party's rights does not prevent or interrupt the running of prescription set forth in LSA-C.C. art. 3536. Smith v. Tyson, 193 La. 571, 192 So. 61 (1939); Cox v. Von Ahlefeldt, 105 La. 543, 30 So. 175 (1900); Aegis Ins. Co. v. Delta Fire & Cas. Co., 99 So. 2d 767 (La.App. 1st Cir.1957).
In Proceeding No. 4665, filed June 2, 1958, she alleged that "during the last four months [she had] learned" of the nullities in succession proceeding No. 1043. There follows then a long recitation of alleged nullities which were the basis of her suit No. 2767 filed in 1951, which she attempted to amplify and enlarge upon. Clearly prescription had long since run against a claim for damages on account of the fraud therein alleged.
If plaintiff can successfully discharge the burden of proof of the frauds alleged in support of her charges of simulation, then she will have defeated the attempt of her co-heirs to defraud her, and there will be no damage. If she fails to prove simulation, whatever alternative claim she might then assert for damages on account of the fraudulent acts of her co-heirs in regard to the transactions attacked would appear to be prescribed. Furthermore, she would then be without a cause or right of action to demand damages. An exception of prescription of one year has not been filed, and we do not pass on it in regard to the demand for damages at this time.
Mrs. Angie Neider Delesdernier, who joined her daughter as a co-plaintiff in part of the litigation, has not appealed. Therefore, we have given no consideration to any claims she might have in a personal capacity as a forced heir of her two deceased sons and see no need to discuss issues which her pleadings might have raised, which were not also raised by Gloria D. Marchand, appellant. She did, on the day before these cases were argued in this Court, file a "Petition of Intervention" in this Court in her capacity as administratrix of the successions of her deceased sons, claiming in such capacity to be a necessary party. She has adopted the briefs and arguments of counsel for Gloria D. Marchand.
Intervenors are required to take the case as they find it and shall not be allowed to retard the progress of the main action. LSA-C.C.P. art. 1033. The intervenor has made no allegations nor demands against either the plaintiff, Mrs. Marchand, or the defendants, and has prayed for nothing except that she be permitted to intervene. We therefore see no need to discuss her petition of intervention further.

III. The Exceptions of Prescription
Defendants have pleaded the prescription of ten years under LSA-C.C. art. 3478 in defense of plaintiff's attack on the sale of the minors' interest in their grandmother's estate (the 15 parcels of land described). This exception was also pleaded in suit No. 2767. We have considered the judgment of the trial court in that suit to determine if this plea was sustained in that judgment, which, if it was, would now be res judicata. This, we think, would hold, notwithstanding the alleged new cause of action based on nullity in the tutorship proceeding which authorized the sale. It is our opinion that the judgment in suit No. 2767 did not decide this issue, but that judgment on its face is ambiguous. We have attempted to resolve the ambiguity by considering the "Reasons for Judgment" which form no part of the judgment itself and are not ordinarily considered. But we think this is justified when necessary to explain a judgment which on its face might be lacking in clarity of intent. Sharp v. Zeller, 114 La. 549, 38 So. 449 (1905); Succession of Landry, 7 Orl.App. 222 (1910). The full text *55 of the "Reasons for Judgment" and the judgment itself are:

"REASONS FOR JUDGMENT.
"The court has carefully considered the briefs of counsel, and the authorities submitted in support of the exceptions of prescription herein filed by exceptors. The court felt that it should pass upon these exceptions first before discussing the others.
"The argument of counsel for exceptor as set forth in his brief, as to the prescription of five years, seems to the court conclusive. The court feels compelled to accept the argument and theory advanced by counsel for exceptors on this point, rather than the argument and theory advanced by counsel for plaintiff.
"Feeling that the exception of prescription of five years was well taken, the court saw no necessity for it to go into the other exceptions and points raised; but, nevertheless, it did so.
"The court feels that the other exceptions filed by exceptors are also well taken.
"For the reasons assigned, the exception of prescription filed by each defendant will be maintained, and the plaintiff's suit dismissed, at her costs. "May 11, 1951.
 [Signed] W. B. Hamlin
 Judge."

"JUDGMENT.
"In this cause, heretofore submitted to the court for adjudication, on the exceptions herein filed by defendants, and the court considering the exceptions of prescription filed by defendants to be well founded:
"It is ordered, adjudged and decreed, that the exception of prescription herein filed by each defendant, George W. Delesdernier and Delesdernier Estates, Inc., be and the same are hereby maintained, and, accordingly, that plaintiff's suit be and the same is hereby dismissed, at her costs.
"Judgment read, rendered and signed in open Court at Pointe-a-la-Hache, Louisiana, this 11th day of May, 1951.
 [Signed] W. B. Hamlin
 Judge."
Notwithstanding the statement in the "Reasons for Judgment" that "the court feels that the other exceptions filed by exceptors are also well taken," it is clear from a reading of the whole that it was the intent of the court to maintain the exception of five years prescription (under LSA-C.C. art. 3542) and that plaintiff's suit was dismissed on that basis only, since that was "conclusive" and there was "* * * no necessity for it to go into the other exceptions and points raised * * *." This is the interpretation given to the judgment by counsel for defendants for they have said in their brief: "An examination of the record in Suit No. 2767 will show that [the] Judge, * * * upheld the defendants' exception of five years' liberative prescription under Civil Code Article 3542 * *."
Furthermore, since good faith is an essential element of the ten year prescription acquirendi causa under LSA-C.C. art. 3478, it could hardly have been overlooked by the court which rendered the judgment that plaintiff's petition in that suit, No. 2767, as in her later suits, was replete with accusations of fraud and bad faith. See Sharp v. Zeller, supra. In her later suits, No. 3005 and No. 4665, plaintiff has again alleged fraud and bad faith in her attack on the sale of her interest to the corporation and all the other numerous sales and transfers which she has attacked. The essential element of "good faith" has been thoroughly assailed by her; and the plea of prescription of ten years acquirendi causa under LSA-C.C. art. 3478, on the basis of her pleadings, must be overruled, without prejudice to defendants to reassert *56 the plea after trial of the issue of good faith on remand.
Counsel for defendants have argued the liberative prescription of five years under LSA-C.C. art. 3542. This was sustained by the court in suit No. 2767, and was the basis for dismissal of plaintiff's petition there. We have already held above that this is res judicata to the limited extent of the demands made and the causes of action pleaded, except the cause founded on the nullity in the tutorship proceeding. We must now consider it on the basis of the cause of action which we have held is not barred by res judicata. In this connection we will consider the plea of liberative prescription of ten years under LSA-C.C. art. 2221.
As pointed out in defendants-appellees' original brief, plaintiff Gloria Marchand was nine years old in January, 1935. She was married at age fifteen in 1941 and was fully emancipated upon reaching eighteen some time not later than January, 1944. In January, 1947, she was twenty-one years of age. We do not know the month and day of her birth.
Counsel for appellees have cited and quoted at length from Whitney Nat. Bank v. Schwob, 203 La. 175, 13 So.2d 782 (1943), and Doucet v. Fenelon, 120 La. 18, 44 So. 908 (1907), and have cited Fried v. Bradley, 219 La. 59, 52 So.2d 247 (1951); Soule v. West, 185 La. 655, 170 So. 26 (1936); and Sewall v. Hebert, 37 La.Ann. 155 (1885). These cases, and many more not cited, distinguished between nullities resulting from violation of some provision of law enacted in the public interest for the protection of public order and good morals, and those resulting from some act in derogation of individual rights. The former are not susceptible of ratification, but the latter are, either expressly or by implication resulting from silence and inaction. "In all cases of executed contracts susceptible of tacit ratification, a presumption of ratification juris et de jure results from silence and inaction during the time fixed for prescription." (Emphasis added.) Barnes v. Barnes, 155 La. 981, 987, 99 So. 719, 722 (1924).
The nullity of which plaintiff here complains, stems from an act in derogation of laws enacted for the individual's protection, and is not in violation of public order or good morals. There is merit in the argument that such an act is susceptible of ratification. The facts, however, do not support the argument that this plaintiff has acquiesced or remained silent or inactive "during the time fixed for prescription." Whether we apply the prescription of ten years under LSA-C.C. art. 2221 or of five years under LSA-C.C. art. 3542, which in either case begins to run from majority and not from emancipation, does not matter. In either case her action was timely.
Suit No. 2767 was filed by plaintiff on January 31, 1951, well within five years of her attaining the age of twenty-one and within ten years of her emancipation by marriage. There is a distinction to be made here between acts necessary to interrupt legally the running of prescription (such as filing a suit) and acts which negate the presumption of ratification by acquiescence through silence and inaction. It is the latter with which we are concerned. Surely it cannot be said that Mrs. Marchand has remained silent or acquiesced in anything since January 31, 1951. Appellees complain in their brief and argument of plaintiff's persistent litigation of the issues before us as well as other suits not presently before this Court. Therefore, the exceptions of prescription liberandi causa pleaded under LSA-C.C. arts. 3542 and 2221 are without merit and must be overruled; except that, as we have already held, the plea of five years prescription is good insofar as plaintiff seeks to set aside the judgment of possession in the succession of Julia Theresa Loga Delesdernier, suit No. 1043.
In proceeding No. 3005, Mrs. Paul Delesdernier was made a party defendant in her capacity as executrix and has *57 pleaded the prescription of two years under LSA-R.S. 9:5621. Apparently the judgment maintained all the exceptions and we must conclude that this one was included. To this extent the judgment in that case, No. 3005, is correct and must be affirmed. In the first place, we fail to find any allegations in plaintiff's petitions of irregularity in the administration of this defendant except that certain properties belonging to the succession were omitted. For the reasons stated above, plaintiff has a right of action to have the succession of her grandfather reopened for the administration of any property that was omitted from the original administration. In this case the court may appoint a new succession representative or reappoint Mrs. Paul Delesdernier. LSA-C.C.P. art. 3393.
Exceptions of prescription of twenty years have been filed. No authority for these exceptions have been cited, and we know of none. No mention is made of the plea in briefs or arguments, and we have not considered it.

IV. The Exceptions of No Cause of Action
The exception of no cause of action pleaded as a bar to plaintiff's attack on the sale of her interest, when a minor, to the family corporation is urged on authority of several cases cited by defendants-appellees.[11] These cases hold that a party seeking rescission of a contract must return or offer to return the consideration received by him as a condition precedent to bringing the action. There is no allegation by plaintiff that she has tendered or offered to pay back to the defendant corporation the $766.55 stated consideration of the sale.
LSA-C.C.P. art. 1151 provides that a plaintiff may amend his petition without leave of court at any time before the answer thereto is served. No answers have been filed to any of plaintiff's petitions. Furthermore, LSA-C.C.P. art. 934 provides:
"When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection cannot be so removed, or if plaintiff fails to comply with the order to amend, the action shall be dismissed."
Comments under this article declare that "* * * this article authorizes the trial judge to permit amendment of the petition whenever possible and whenever dismissal of the suit would not be in the interest of justice. This rule is simply declaratory of the liberality of amendment characterizing the recent decisions of our appellate courts."
We therefore hold that the interests of justice require that the plaintiff be allowed a reasonable time by the trial judge after remand to amend her petition to meet the objection raised by this exception of no right of action in accordance with LSA-C.C.P. art. 934. We have carefully examined the judgment of the trial court and fail to find therein any ruling either maintaining or overruling this exception. It should be maintained, reserving to plaintiff the right to amend her pleadings as here indicated.

V. The Plea of Estoppel
Estoppel is pleaded against plaintiff's attack on the nullity of the tutorship proceedings based upon the judicial admission by the tutrix in her petition to transfer the tutorship to Orleans Parish in which she stated under oath that she and the minors did reside in Plaquemines Parish at the time in question. Appellees quote the following *58 excerpt from Cormier v. Thibodeaux, 20 So.2d 621 (La.App. 1st Cir.1945):
"* * * The judicial proceedings on which such judgment is based may very well, and in some cases have, served as the basis of a plea of estoppel. In this connection we believe the following language of Justice Higgins in the case of Jackson v. United Gas Public Service Co., 196 La. 1, 198 So. 633, 643, on rehearing, is pertinent: `While it is necessary that the rights of minors be protected in every way possible, it is likewise essential that titles to real estate should be stable and certain and, therefore, where the legal representatives of minors, acting in their behalf, follow the requirements of the law in representing them to the best of their ability and understanding in a way that is considered most advantageous and beneficial to the minors' interest, the minors are thereby bound and are estopped to deny the judicial declarations of fact and representations made by their tutor in their behalf, when third persons have relied thereon and dealt with them in good faith and for a valuable consideration.'" 20 So.2d at 624, 625.
We fail to see where the language quoted supports the plea of estoppel in the instant case. In the first place the statement of Justice Higgins has as its premise the assumption that the tutor has "follow[ed] the requirements of the law in representing" the minors. It is this assumption that plaintiff attacks. In the second place there is nothing in the record to indicate that third persons in good faith have relied on the statement. The contrary is apparent from the fact that the minors' sale to the defendant corporation has been under litigation since January 31, 1951, and notices of lis pendens have been on record. Furthermore in the cited case the irregularity complained of was relative, whereas here it is an absolute nullity, and it cannot be made good by an affidavit of the tutrix alleged to be false. See Neal v. Lapleine, 48 La.Ann. 424, 19 So. 261 (1896).
Estoppel is an equitable defense and should not be sustained in bar of an action exception where equity and the ends of justice demand it. Zemurray v. Boe, 235 La. 623, 105 So.2d 243 (1958); Sanderson v. Frost, 198 La. 295, 3 So.2d 626 (1941). Plaintiff should have an opportunity to establish by such evidence as she can the falsity of her tutrix's allegation. The question involved seems to us to be one easily susceptible of positive proofthat is, whether she did nor did not reside with her mother in Plaquemines Parish when the tutrix was appointed and qualified. Equity and justice would be best served by overruling the plea of estoppel and remanding the case for testimony on this important issue of fact.
Much has been said in briefs about the long and protracted seige of litigation to which the plaintiff has subjected her uncles and aunts. It would be made to appear that she has been responsible for the delays in bringing the litigation to finality. On the contrary, she brought her first suit in January, 1951, and is yet to have her first day in court on the merits of any of her suits. It is true that, after the appeal was lodged in the Court of Appeal, July 19, 1961, no action was taken, and the appeal was finally dismissed as abandoned in 1957. In the meantime, her grandfather died, his succession was opened, and plaintiff filed suit in that proceeding in 1957. From that time the delays have not been due to any want of diligence on her part. The consolidated cases were submitted for hearing on the exceptions, October 29, 1962. Briefs were filed, but apparently no oral argument was ever set, and judgment maintaining the exceptions was rendered, July 31, 1964. On July 30, 1965, "Reasons for Judgment" were filed. We are not moved by appellees' lament of the harassment of the plaintiff by *59 "carry[ing] on a running and perpetual battle" with her uncles and aunts.
Perhaps we could have reached a judgment in this case without discussing some of the points covered in this lengthy opinion, but we have attempted to decide every material issue in the hope that it will expedite the further proceedings, bring about a final judgment, and put an end to this family litigation at the earliest possible time. Since this case will be remanded, we have attempted to lay down some guidelines pointing out as precisely as we can the triable issues in the hope that it may be of help both to counsel and to the trial court.

VI. Decree
For the foregoing reasons, the judgments in each of the consolidated cases maintaining the pleas of res judicata are amended so as to maintain the pleas of res judicata to the extent only that the demands and causes of action pleaded in suit No. 2767 on the docket of the Twenty-Fifth Judicial District Court, entitled Gloria Delesdernier, wife of Paul Marchand, Jr., v. George W. Delesdernier and Delesdernier Estate, Incorporated, are identical with the demands and causes of action pleaded in suits Nos. 3005 and 4665 as defined in this opinion; and in all other respects they are reversed; and the pleas of res judicata are overruled.
The judgment maintaining exceptions of prescription to the demand for a declaration of nullity of judgment of possession in, and for reopening of, Succession of Julia Loga, wife of George W. Delesdernier, No. 1043 on the docket of the Twenty-Fifth Judicial District Court, Parish of Plaquemines, No. 2077 on the docket of this Court, is affirmed. The judgment in proceeding No. 3005 on the docket of the Twenty-Fifth Judicial District Court, Parish of Plaquemines, Succession of George W. Delesdernier, maintaining the exception of prescription of two years under LSA-R.S. 9:5621 is affirmed. In all other respects the judgments maintaining all exceptions of prescription are reversed and said exceptions are overruled, without prejudice to defendants-appellees to reassert the exception of prescription acquirendi causa under LSA-C.C. art. 3478 after trial on the issue of good faith.
The judgments maintaining exceptions of no cause or right of action to the demands for collation are affirmed.
The exception of no right of action to plaintiff's demand for declaration of nullity of the sale of the minors' interest to the defendant Delesdernier Estate, Incorporated, of their undivided interest in the property in the Succession of Julia Loga, wife of George W. Delesdernier, as ordered by judgment of January 22, 1935, in said succession proceeding, No. 1043 on the docket of the Twenty-Fifth Judicial District Court, Parish of Plaquemines, is maintained; and the cases are remanded, reserving to plaintiff the right to amend her petitions under LSA-C.C.P. art. 934.
The judgments maintaining the pleas of estoppel are reversed and overruled.
Proceedings Nos. 3005 and 4665 on the docket of the Twenty-Fifth Judicial District Court, Nos. 2078 and 2079, respectively, on the docket of this Court, are remanded for trial on the issue of simulation and for all other proceedings consistent with the views herein expressed.
The defendants-appellees are cast in solido for the costs of this appeal. All other costs shall be assessed after final judgments are rendered herein.
Affirmed in part; reversed in part; remanded.
NOTES
[1] Succession of Julia Theresa Loga, wife of George W. Delesdernier, No. 1043 on the docket of the Twenty-Fifth Judicial Court, Parish of Plaquemines, and No. 2077 on the docket of this Court.
[2] No. 3005 on the docket of the Twenty-Fifth Judicial District Court, Parish of Plaquemines, No. 2078 on the docket of this Court.
[3] No. 4665 on the docket of the Twenty-Fifth Judicial District Court, Parish of Plaquemines, and No. 2079 on the docket of this Court.
[4] In January, 1935, the minor Gloria Delesdernier was nine years of age and her two brothers were eleven and thirteen years of age.
[5] Lloveras v. Reichert, 197 La. 49, 200 So. 817 (1941); Hope v. Madison, 194 La. 337, 193 So. 666 (1940).
[6] The demand included that portion of her two brothers' interest which she had inherited from them. They were minors in 1935, and their interests were also sold to the corporation.
[7] This is, of course, the basis of her claims in the subsequent suits, with the additional claim as an heir of her brothers in the later suits.
[8] This is the basis of their very serious contention that the tutorship proceeding and the order emanating therefrom were absolute nullities on account of want of jurisdiction over the minors, apparent on the face of the petition. The seriousness of this allegation and the vigorous arguments on this point require our special attention which will be given below.
[9] Her original "petition for collation" was filed, June 14, 1957. Petition by Angie Neider Delesdernier was filed, May 1, 1958. Supplemental and amending petitions were filed by Gloria D. Marchand, June 4, 1958, and May 1, 1962.
[10] Original petition filed, June 2, 1958, by Gloria D. Marchand and Mrs. Angie Neider Delesdernier. Supplemental and amended petition filed, October 5, 1960, by Gloria D. Marchand.
[11] Thomas v. Philip Werlein, Ltd., 181 La. 104, 158 So. 635 (1935); Bowen v. Marston, 134 La. 298, 64 So. 118 (1913); Succession of Saltier, 115 La. 97, 38 So. 929 (1905); Bryant v. Stothard, 46 La. Ann. 485, 15 So. 76 (1894); Latham v. Hicky, 21 La.Ann. 425 (1869); Byrne v. Ortte, 33 So.2d 209 (La.App. Orleans 1948).