FRED W. JONES, Jr., Judge.
Pursuant to a joint petition, on April 25, 1978 Rachel Williams Kieinpeter along with her niece and nephew [1] were placed in possession of the succession of Stella Williams, deceased mother of Mrs. Kieinpeter and grandmother of the other two petitioners. On May 8, 1978 Mrs. Kieinpeter filed a rule against her niece and nephew to correct the judgment of possession to reflect that plaintiff-in-rule was the sole heir of her mother by virtue of her brother’s renunciation of his interest in the decedent’s estate. Defendants-in-rule answered, pleading that their aunt was estopped to deny her judicial confession that through representation of their father they were heirs to the succession. Their father, Milton Williams, intervened, alleging that his renunciation of his mother’s succession was conditioned upon execution by his sister of the joint petition and that this constituted a judicial confession by Mrs. Kieinpeter that the Williams children were entitled to an undivided one-fourth interest each in their grandmother’s estate.
The trial judge sustained the plea of es-toppel, filed on behalf of defendants-in-rule *337 and the intervenor, and rejected the demands of Mrs. Kleinpeter, who appealed this judgment.

Context Facts

Stella Lea Williams, whose husband predeceased her, died intestate at her domicile in Shreveport on March 7, 1978. The decedent was survived by two children, Rachel Williams Kleinpeter of Baton Rouge and Milton Williams of Shreveport.
With the approval of his sister, Williams retained a Shreveport attorney, who had represented Williams for many years, to settle the succession of their deceased mother. On March 14, 1978 this attorney filed on behalf of the two heirs a petition to have a Notary Public appointed to search for a testament. Attached to the petition were an affidavit of heirship and an affidavit executed by the heirs attesting to the correctness of the factual allegations of the pleading. In the meantime Williams expressed to the attorney a desire, for tax purposes, to have his inheritance by-pass his estate and vest directly in his two children. After researching the issue, the attorney advised Williams that his goal could be accomplished by the renunciation of his mother’s succession and the subsequent filing of a joint petition by his sister and his two children requesting that they be sent into possession of the succession in the proportion of an undivided one-half interest in the sister and an undivided one-fourth interest in each of the children.
On April 17,1978 the Shreveport attorney mailed to Mrs. Kleinpeter in Baton Rouge the following documents for signing:
(1) A detailed descriptive list, the preamble to which recited that Mrs. Kleinpeter, her niece and nephew were the joint petitioners for possession, that the factual allegations of the joint petition were correct, and that they accepted the succession unconditionally. Milton Williams was not listed as a joint petitioner.
(2) A state inheritance tax return, showing the heirs as Mrs. Kleinpeter, her niece and nephew, with the taxes computed on the basis that Mrs. Kleinpeter was receiving V2 of the estate and the Williams children Vi each. Milton Williams was not listed as an heir.
(3)A cash deed under the terms of which immovable property belonging to the Williams estate was conveyed to Alan G. Pierce. Named as vendors were Mrs. Kleinpeter, the Williams children and Milton Williams (who along with his sister already owned an interest in this property by inheritance from their deceased father).[2]
It was disputed whether, along with these described papers, the Shreveport attorney also mailed a copy of the joint petition and the judgment of possession. Be that as it may, it was established that Mrs. Kleinpeter returned to Baton Rouge from a Houston trip on April 22, 1978 and signed the documents on April 24, 1978. Where a Notary Public was required that official was Mrs. Kleinpeter’s husband, a veteran Baton Rouge attorney.
On April 18, 1978, Milton Williams executed an instrument in authentic form, prepared by the Shreveport attorney, under which he renounced his interest in his mother’s succession. Mrs. Kleinpeter did not learn of this until later.
Since the loan closing for the transaction involving the property described in the cash deed (residence formerly occupied by the decedent) was scheduled for April 25, 1978, Mrs. Kleinpeter and her husband traveled to Shreveport that morning, bringing to the office of the attorney handling the succession the papers signed by Mrs. Kleinpeter. The attorney was in conference, but his secretary handed to the Kleinpeters copies of all the succession pleadings, including a copy of the act of renunciation executed by Milton Williams.
The Kleinpeters then went to the office of Milton Williams where Kleinpeter expressed concern over title complications *338 which he believed would result from Williams’ renunciation and the manner in which the succession pleadings were being handled. The same concern was voiced shortly thereafter in a telephone conversation between Kleinpeter and the Shreveport attorney, who had been called by Williams to discuss the question raised by Kleinpeter. Although there was some dispute about the precise language used by Kleinpeter in this telephone conversation, the gist of his complaint was that his wife might be inconvenienced later by the necessity for executing instruments to clear up title problems.
The Shreveport attorney apparently did not share Kleinpeter’s concern since he immediately proceeded to file the joint petition, with accompanying papers, and to procure the signing of the judgment of possession.
On the afternoon of April 25, 1978 the Kleinpeters, Milton Williams and his daughter (who had a power of attorney from her brother) met with the vendee of the succession property in the office of another Shreveport attorney for the loan closing. The necessary papers were signed. At no time during this meeting did the Kleinpet-ers express any reservations about the manner in which the succession was handled or the possibility of title complications. The attorney handling the loan closing explained to the vendors that the loan proceeds would be distributed later. However, by letter dated April 26, 1978 Kleinpeter advised the attorney that his wife would not accept any of the proceeds from the sale, and the check remitted to her was later returned.
We now proceed to a discussion of the significant legal issues posed by this appeal.

Effect of Act of Renunciation

Pertinent to a discussion of this issue are the following articles of the Louisiana Civil Code:
Art. 1022: The portion of the heir renouncing the succession, goes to his coheirs of the same degree; if he has no coheirs of the same degree, it goes to those in the next degree. . ..
Art. 1023: The accretion operates of full right independently of the will of the person for whose benefit it is, and whether he be ignorant or not of the renunciation which gave rise to it.
Art. 1024: He in whose favor the right of accretion exists, can not refuse the portion of the heir who has renounced, and keep that part which has fallen to him in his own right, because he is bound to accept or renounce for the whole.
Applying the explicit provisions of these articles to the facts of this case, we find that upon his execution of the act of renunciation on April 18, 1978, Williams’ interest in his mother’s succession devolved upon his only coheir of the same degree, Mrs. Klein-peter. However, in the joint petition for possession Mrs. Kleinpeter purported to accept only that portion of the estate which had fallen to her in her own right, impliedly refusing the portion which her brother had renounced. This clearly is proscribed by Article 1024.
We also note that in the joint petition for possession the Williams children professed to appear “by representation of their father” who, of course, was still living. La. CC. Art. 899 provides: “Persons deceased can only be represented; persons alive cannot.” Consequently, the Williams children were prevented by law from representing their father in his mother’s succession.
Defendants and intervenor argue that heirs may agree to distribute an estate in a manner other than that provided by law, citing in support of this proposition La. C.C. Art. 2291 (which deals with judicial confessions) and numerous cases, including Succession of Rufin, 143 La. 828, 79 So. 421 (1918); Succession of Carter, 149 La. 189, 88 So. 788 (1921); and Alexander v. Hall, 45 So.2d 916 (La.App.2d Cir. 1950).
Discussing Article 2291, the court in Cheatham v. City of New Orleans, 378 So.2d 369 (La.1979) stated:
“The jurisprudence interpreting this statute is well settled to the effect that an admission made in a pleading is within the purview of this statute. It is also well settled that a judicial confession is a *339 party’s explicit admission of an adverse factual (emphasis added) element and that it has the effect of waiving evidence as to the subject of the admission, of withdrawing the subject matter of the confession from issue.”
In examining the cases relied upon by the defendants and intervenor, we note a common thread running through them — in the contested pleadings the plaintiffs alleged adverse facts resulting in a different method of distribution under the law than if the facts had been correctly stated. In the case at bar the facts were correctly stated but petitioners were not placed in possession according to the law as applied to those facts. This was not merely an error or misapplication of the law by virtue of which an estate was distributed in a manner other than that provided by law, but an attempt to proceed in a manner expressly prohibited by law, i. e., by Mrs. Kleinpeter to accept only a portion of a succession and by the Williams children to represent a live parent.
To summarize with reference to this issue, upon the renunciation of his mother’s succession the interest of Milton Williams went to his sister, his only coheir, by operation of law. In order to vest the Williams children with the ownership of an undivided one-fourth interest each in the succession, it would have been necessary for Mrs. Klein-peter to accept the entire succession and then donate the specified interests to her niece and nephew. Rather than doing this, she attempted to accept only a part of the succession, which is prohibited by law. In the joint petition she did not allege any facts which constituted a judicial confession under Article 2291. Since Milton Williams did not appear as a party to the joint petition, his renunciation could not be construed as an acceptance of the succession and a donation of his interest to his children. Under the circumstances his children had no legal right to appear as parties to the joint petition since they had not inherited any portion of their grandmother’s estate. Their aunt was the sole heir to the succession and had not donated an interest to them.
For these reasons, we find the judgment of possession dated April 25, 1978 to be null and void and it is set aside.[3]

Defense of Estoppel

Having decided that the judgment of possession must be set aside, we next consider whether Mrs. Kleinpeter is estopped in this proceeding to accept the succession of her mother as sole heir after the renunciation of her only coheir.
Equitable estoppel is defined in American Bank & Trust Co. v. Trinity Universal Ins. Co., 205 So.2d 35 (La.1967) as:
“.. . (t)he effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. Founded upon good faith, the doctrine is designed to prevent injustice by barring a party, under special circumstances, from taking a position contrary to his prior acts, admissions, representations, or silence.”
Thus, the party invoking the doctrine of estoppel must establish the following three elements through proof of facts: (1) a representation by word, action or inaction; (2) justifiable reliance on the representation; and (3) a change in position to one’s detriment because of the reliance. See Wilkinson v. Wilkinson, 323 So.2d 120 (La.1975); Duthu v. Allements Roberson Machine Works, 393 So.2d 184 (La.App. 1st Cir. 1980).
Adverting to the facts established in this case to determine if the parties who pleaded estoppel discharged their burden of proof, we find:
(1) That prior to the filing of the joint petition for possession Mrs. Kleinpeter was fully aware of her brother’s renunciation of their mother’s succession, of the legal effect of that renunciation, and of her right to accept the entire succession. Her attorney *340 husband acknowledged that he examined the papers forwarded to his wife in Baton Rouge and noted that the Williams children appeared as heirs rather than their father. By executing those documents Mrs. Klein-peter in effect represented to her brother that she was in accord with his plan to have his children inherit the interest which would have gone to him in the succession. Furthermore, after reading the act of renunciation on April 25, prior to the filing of the joint petition and signing of the judgment of possession, Mrs. Kleinpeter had ample opportunity to instruct the Shreveport attorney that she desired to exercise her legal rights under the act of renunciation and be placed in possession of the entire succession. She did not do this. Instead, her husband merely voiced complaints about possible title complications. Both later remained silent during the loan closing which involved alienation of succession property. By her silence and inaction, Mrs. Kleinpeter represented to her brother that she continued to concur with his plans.
(2) There is no question but that Milton Williams relied upon the representations of his sister by having the joint petition and accompanying papers filed and the judgment of possession signed.
(3) As it developed, by relying upon his sister’s representations, Milton Williams acted to his detriment. Williams’ position consistently was that he desired his children to inherit in his place. At no time did he express a desire that Mrs. Kleinpeter inherit his portion of his mother’s succession. It is clear that had his sister indicated that she planned to claim the entire succession by virtue of the renunciation, Williams would have exercised his right under La. C.C. Art. 1031[4] to revoke his renunciation since Mrs. Kleinpeter had not accepted the succession. Instead, because of his sister’s representations, Williams acted to his detriment, i. e., not revoking the renunciation, but proceeding to file the joint petition and securing judgment.
We find, therefore, that Mrs. Kleinpeter is equitably estopped to accept the succession of her deceased mother in these proceedings.

Conclusion

For the reasons set forth, we reverse the judgment of the district court and set aside the judgment of possession dated April 25, 1978, but find that the appellant is estopped to accept the succession of Stella Lea Williams until Milton Williams has a reasonable opportunity to revoke his act of renunciation. Acting pursuant to the authority granted us by La. C.C.P. 2164[5] we grant Milton Williams a period of 15 days from the date of finality of this judgment to revoke his renunciation of his mother’s succession. The case is remanded to the district court for further proceedings consistent with this opinion and in accordance with law.
Costs of this appeal are assessed one-half to appellant and one-half to appellees.
Before PRICE, HALL, MARVIN, JASPER E. JONES and FRED W. JONES, Jr., JJ.

. These were the children of Milton Williams, brother and only coheir of Mrs. Kieinpeter, who had allegedly renounced his mother’s succession.

. There was some dispute as to whether Williams’ name was inserted in the deed as a vendor before or after his sister executed the instrument. We agree with the trial judge that this was irrelevant.

. Although Mrs. Kleinpeter did not pray for this relief, La. C.C.P. Art. 862 authorizes its granting as long as the party is entitled to it under the pleadings.

. This article provides in part: “So long as the prescription of the right of accepting is not acquired against the heirs who have renounced, they have the faculty still to accept the succession, if it has not been accepted by other heirs.... ”

. “The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. ... ”